STATE v. GEORGE W. PETERSON.[1]

June 1, 1906.

Nos. 14,770—(24).

**Intoxicating Liquor—Evidence of Other Sales.**

    The admission of evidence, on the trial of an indictment for selling liquor without a license, of sales by defendant to persons other than the one named in the indictment, *held*, in view of the facts disclosed by the record, not error, though it tended to prove the commission of other offenses. Such other sales were a part of a general scheme and plan devised by defendant to continue in the business of selling intoxicating liquor without a license, and were so related to the sale charged as to render the same proper corroborative evidence.

**Cross-Examination of Witnesses.**

    There was no error in the rulings of the trial court restricting the cross-examination of the state's witnesses on matters affecting their credibility.

Appeal by defendant from a judgment of the district court for Steele county, Buckham, J., whereby defendant was convicted of the crime of selling intoxicating liquor without a license, and a sentence of fine and imprisonment imposed.  Affirmed.

*John Moonan* and *Harlan E. Leach*, for appellant.

*E. T. Young*, Attorney General, and *S. T. Littleton*, County Attorney, for the State.

BROWN, J.

For some time prior to May 1, 1905, defendant was a licensed saloonkeeper doing business in the village of Blooming Prairie, in Steele county.  Immediately prior to that date the village council raised the saloon license fee from $500 to $1,500.  Defendant was evidently dissatisfied with this action of the council and concluded not to apply for a license for the year commencing May 1, and none was issued to him.  The evidence is conclusive, however, that he was determined to continue in his business without a license.  To that end he adopted the novel plan of locking the door of his building

[1]Reported in 108 N. W. 6.

and providing his numerous customers with keys—about three hundred were in circulation—with which they might enter the saloon when in need of his wares. He changed the name of his liquors—whiskey to "ginger ale," and beer to "suds"—and with these modifications continued in the saloon business precisely as he had carried it on before the expiration of his license. His place of business, equipped with bar fixtures, pool tables, and other articles usually found in a modern saloon, remained the same after May 1 as it existed prior to that date. Liquors were bought by him, taken to the saloon, and disposed of over the bar to patrons as they appeared. On November 26, 1905, he sold a bottle of whiskey to one Bud Williams, for which the grand jury indicted him for selling liquors without a license. After trial in the court below, he was found guilty of the charge against him, and sentenced to pay a fine of $100 and be committed to the common jail of the county for the term of thirty days. He appealed from an order denying his motion for a new trial.

The principal assignment of error presents the question whether evidence of sales by defendant to other persons than Williams, the one named in the indictment, at about the time of the sale in question, was admissible. The court admitted such evidence over defendant's objection, and this he insists was reversible error. We find no force or particular merit in this contention. The charge against defendant was selling liquor without a license, and, though the specific sale to Williams was the basis of the indictment, it is clear that evidence of other like sales was, under the circumstances here shown, proper in corroboration of the principal charge. It disclosed a deliberate plan and scheme on the part of defendant to continue in the sale of intoxicating liquors without a license. The evidence complained of tended to expose and lay bare that scheme. It was therefore immaterial that it showed other indictable offenses. It was all a part of one plan concocted by defendant wilfully to violate the law, and was clearly competent within the authorities. The case comes within the rule laid down in State v. Ames, 90 Minn. 183, 96 N. W. 330, where we held, after a thorough consideration of the question, that evidence of the commission of other crimes by the defendant is competent if it tends, corroboratively or directly, to establish his guilt of the crime charged in the indictment on trial, or some essential ingredient there-

of, and that such evidence tends to establish guilt when it discloses a motive, a criminal intent, or is a part of a common scheme or plan embracing two or more crimes so related to each other that the proof of one tends to prove the other. Within this rule there was no error in the ruling of the court admitting the evidence here complained of.

It is also urged that the court erred in restricting the cross-examination of certain of the state's witnesses conducted by defendant's counsel with a view to discrediting their testimony.

It seems that the village authorities found some difficulty in obtaining sufficient evidence from the local inhabitants to justify the prosecution of defendant, and resort was had to the services of a detective. One was employed for this purpose and directed to obtain proof of the fact that defendant was selling liquors without a license, if that fact existed. He entered upon the discharge of his work and was quite successful. Not wishing to deal with the citizens of the place, he adopted the ingenious, and what proved effective, plan of sending to the village a troupe of theatrical performers for the ostensible purpose of giving an entertainment at the village opera house, but in reality with the object of obtaining evidence against defendant. Members of the troupe were selected, not with a view to their proficiency as actors, but with a knowledge of their ability to locate at long range through their acute sense of smell the precise whereabouts of "wine when it is red." The troupe was made up of two colored artists, a bicycle acrobat, an all-around performer, named Bud Williams, and a ballet dancer. Members of this aggregation made their way to Blooming Prairie on November 25, 1905, and immediately after securing quarters at the leading hotel the male members set out in search of defendant's place of business and found it. They there purchased, during that day and the day following, various liquors, including the bottle of whiskey charged in the indictment, noticed sales made to others, and detailed generally, as witnesses, the manner in which defendant was conducting his business. The state largely relied upon their testimony for conviction, though it was abundantly corroborated by other evidence.

The cross-examination, which the court restricted, tended to reflect upon the character of the female member of the troupe, who was represented as the wife of one of the actors, but had, as suggested by

the cross-examination, bestowed affections upon another member of the troupe. She was not a witness for the state and did not appear at the trial. Within the rule laid down in Malone v. Stephenson, 94 Minn. 222, 102 N. W. 372, it was within the discretion of the court to restrict the cross-examination in this respect, and it was not abused.

We have examined all other points made in the brief of appellant, not covered by the oral argument, and discover no reversible error.

The judgment appealed from is affirmed.