MARY C. PETRUSCHKE AND ANOTHER v. M. KAMERER AND ANOTHER.[1]

December 10, 1915.

Nos. 19,465—(122).

**Appeal and error — failure to take exceptions at trial.**

1. Errors assigned upon rulings at the trial cannot be considered here, unless excepted to at the time or specified in the motion for a new trial. The same holds true in respect to errors in the charge. The record is not sufficient to review the claim of improper argument to the jury.

**Malicious prosecution — want of probable cause — advice of attorney.**

2. In this action for malicious prosecution of five civil actions against plaintiffs herein, it is *held* that probable cause does not conclusively appear for bringing each action, and that in two, or more, disputed facts may necessitate a jury's aid, although want of probable cause for bringing an action is for the court. As to the ancillary remedy of attachment, obtained in one of the actions, the order vacating the writ

[1]Reported in 155 N. W. 205.

established, *prima facie*, want of probable cause. Whether advice of attorney protects defendants was for the jury.

**Question of excessive damages.**

3. In determining whether passion and prejudice influenced the jury to give excessive damages, the whole record may be examined, and not alone the erroneous rulings whereby evidence tending to create passion and prejudice was received.

**New trial.**

4. The reception of certain evidence *held* error and ground for a new trial, when taken in connection with matters in the record which unnessarily tended to inflame the jury and bring about an excessive verdict.

Action in the district court for St. Louis county against M. Kamerer and John J. Frey to recover $1,350 for malicious prosecution. The case was tried before Fesler, J., who when plaintiffs rested denied defendants' motion to dismiss the action, and a jury which returned a verdict for $3,750. Defendants' motion for a new trial was denied. From the judgment entered pursuant to the order for judgment, defendants appealed. Reversed and new trial granted.

*Abbott, MacPherran, Lewis & Gilbert,* for appellants.

*Arnold & Arnold,* for respondents.

HOLT, J.

The defendant M. Kamerer was the owner of a hotel in Duluth, and on August 22, 1912, by written lease, let it to plaintiffs. The lease did not include a portion of the lower story of the building, suitable for saloon purposes. The defendant Frey conducted all the transactions with plaintiffs as agent of the owner. Under the terms of the lease defendant Frey was to have a room in the hotel and board free. At the time the lease was made plaintiffs bought the personal property and furnishings of the hotel from defendant Kamerer for $1,675, and, to secure $1,567 of the unpaid purchase price, gave a chattel mortgage upon the property in the hotel. The following February, by verbal lease, the portion of the building above referred to came into the possession of plaintiffs and therein they started a saloon. Very little was paid on the rent and in March, 1914, defendant Kamerer claimed some $1,500 due and unpaid

upon the leases, and about the same amount on the chattel mortgage. About that time some disagreement arose between the parties with reference to repairs. The result was that Kamerer, through her agent Frey, instituted these five actions against the Petruschkes, viz.: an action in the municipal court of West Duluth, to recover the unpaid rent for the hotel, and therein a number of boarders of the hotel were garnisheed; an action in the district court to recover the unpaid rent for the saloon, wherein a writ of attachment was obtained and levied upon the personal property in the hotel and saloon; an action in replevin in the district court to secure the possession of the property covered by the chattel mortgage, and two actions of unlawful detainer in the municipal court of Duluth to recover possession of the hotel and saloon. The first mentioned action was transferred to the district court because of a large counterclaim growing out of an alleged breach of the landlord's agreement to make repairs; and, thereafter, the rent actions appear to have been tried together; also, perhaps, the replevin suit, but how that was tried is not made very clear by the record, for no verdict was rendered in the latter. The judgment, however, recites that the suit was dismissed with the consent of Kamerer. Soon after the institution of these actions the writ of attachment was set aside on motion of the Petruschkes. But in the meantime, upon application of Kamerer, a receiver was appointed by the court to take charge of the property seized under the writ of replevin. The levy of the attachment undoubtedly covered part, if not all, of the property described in the chattel mortgage and writ of replevin. In the rent actions the Petruschkes filed counterclaims, of the nature already indicated, for $5,000 and $6,000. The verdict was in favor of the Petruschkes for $151. Of course, it cannot be determined whether the jury found no rent due and allowed $151 upon the counterclaims, or found that the whole amount of the rent claimed was due and allowed the counterclaims in an amount exceeding the rent. In the unlawful detainer actions Kamerer obtained judgment in the one, and the other was dismissed because the Petruschkes had moved out before it came on for trial. Thereafter this action was instituted by the Petruschkes against Kamerer and Frey to recover damages on the charge that each of these five actions was instituted without probable cause and with malice. The

trial resulted in a judgment in favor of plaintiffs for $3,750 and costs, and defendants appeal.

Defendants moved for a new trial upon the minutes of the court and the stenographer and upon the records, files and exhibits on the grounds: "That said verdict was not justified by the evidence, is contrary to law, is excessive and appears to have been given under the influence of passion and prejudice, and for errors of law occurring at the trial and excepted to at the time by counsel, and for misconduct of plaintiff's counsel in his argument to the jury." The attorneys who appear in this court did not try the case or make the motion for new trial. Numerous errors are now assigned; however, under our settled practice, we can review but very few. The settled case shows no exceptions to the charge, taken at the trial, and no fault was found with it in the motion above set forth. We therefore cannot reverse for erroneous instruction, although there is here just cause for complaint both as to the rule given for punitive damages and as to the effect of a determination of a suit upon which this action is based in favor of Kamerer. American Engine Co. v. Crowley, 105 Minn. 233, 117 N. W. 428; Pink v. Metropolitan Milk Co. 129 Minn. 353, 152 N. W. 725. Nor may we consider errors in any ruling on the reception of testimony, unless an exception was taken at the time, since none are taken by the motion for a new trial (Cappis v. Wiedemann, 86 Minn. 156, 90 N. W. 368), and cases cited in 2 Dunnell, Minn. Dig. § 7091. And as to misconduct of counsel, in his address to the jury, we note that the record does not purport to set out the language used except as recited by the attorney in taking the exception. Nor does it appear that the trial court was asked to interfere. The record is not sufficient to support an assignment of error upon improper argument of counsel. McQuade v. Golden Rule, 105 Minn. 326, 117 N. W. 484; Gibson v. Iowa Central Ry. Co. 115 Minn. 147, 131 N. W. 1057.

It is argued with much force that, as a matter of law, probable cause appears for the institution of each of the five suits, and hence the verdict is not justified by the evidence. In actions for malicious prosecution, want of probable cause and malice in law must be proven by plaintiff. What is probable cause is for the court. 2 Dunnell, Minn. Dig. §§ 5744, 5749; Williams v. Pullman Co. 129 Minn. 97, 151 N. W. 895, and cases there cited. In Burton v. St. Paul, M. & M. Ry. Co. 33 Minn. 189, 22

N. W. 300, it is said: "Probable cause may be defined as such reasons, supported by facts and circumstances, as will warrant a cautious man in the belief that his action, and the means taken in prosecuting it, are legally just and proper." We agree with defendants that as to the unlawful detainer actions the record does not show a termination in favor of these plaintiffs; on the contrary, in one of them, it discloses a judgment in favor of defendant Kamerer, for restitution, and, in the other, a dismissal because the Petruschkes had vacated. Judgment in favor of a plaintiff is conclusive that he had probable cause for bringing the action, unless such judgment was procured by fraud. Nelson v. International Harvester Co. of America, 117 Minn. 298, 135 N. W. 808. But with reference to the rent actions we think there are facts in dispute, bearing on the question of want of probable cause, which, probably, will have to be submitted to a jury. Moreover, as to the attachment, an ancillary remedy in one of these actions, the order vacating the writ makes a *prima facie* case of want of probable cause for procuring its issuance. With respect to the replevin suit we are not prepared to hold, upon this record, that it has not been terminated, or that the judgment of dismissal was pursuant to an agreement or compromise, so that under Wickstrom v. Swanson, 107 Minn. 482, 120 N. W. 1090, it may not serve as a basis of an action for malicious prosecution. Nor are we inclined to the view that the protection afforded in the advice of counsel is so fully made out that no question of fact remains for the jury. We cannot hold that, as a matter of law, there is no evidence upon which to base a verdict for malicious prosecution.

One ground assigned for a new trial in the court below was excessive damages given under the influence of passion and prejudice. The same ground is assigned here. We take it that under this assignment the whole record may be examined for matters inducing passion and prejudice affecting the size of the verdict, even though such matters crept in at times when appellants' counsel failed to object because he did not realize their pernicious effect. And, of course, if any evidence went in against proper objection and exception which tends to prejudice or to unduly increase the damages, it may be considered in this connection.

It is not easy to see any connection between malicious prosecutions of civil actions and the act of third parties in canceling insurance on the

property involved, or the sending notices by health officers to put the premises in a clean and sanitary condition. No damage resulted from the cancelation of any insurance policy. But the complaint herein made the charge, and the answer admitted that it had occurred. Nevertheless, plaintiffs were permitted to introduce a letter from a casualty insurance agent stating that their insurance had been canceled. The letter closed with this sentence: "I would, therefore, urge upon you the necessity of forcing your landlord to make the necessary repairs." It is apparent that the opinion of the insurance agent as to whose duty is was to make repairs ought not to have been received. In view of the admission in the answer, the only purpose to be served by the introduction of the letter was injecting the opinion of a third party that defendants' conduct was reprehensible and in violation of obligations. The letter was duly objected to and an exception taken. We deem this error, not perhaps sufficient to reverse were there no other matters leading to the conclusion that because of passion and prejudice influencing the jury the trial was not fair, and resulted in an excessive verdict.

Plaintiffs introduced a clipping from a newspaper at Duluth; the reporters, who wrote it, first having been permitted to testify that it was founded on an article sent in by Frey, which article was so "libelous" that it could not be used but had to be rewritten. The clipping is a reiteration of the claims made by these defendants in the rent and replevin actions, and is evidently in answer to a previous publication which placed Frey in what he deemed bad light. There is no evidence that Frey instigated the first publication. The clipping was published two days after the attachment. It is not couched in language tending to support a claim for damages, nor does it display malice in fact. Its introduction appears to have served as an occasion for permitting the reporters to state that it was prepared from a "libelous" writing gotten up by Frey. We do not think the clipping should have been received.

Another matter was introduced by the pleadings and proof which does not seem to have any legitimate bearing in this action. In the complaint herein it is alleged that defendants, after the execution of the written lease, changed it by inserting a provision that Frey was to have free board with the Petruschkes. No such issue was made in the rent actions. Its injection as an issue herein serves only one purpose, namely, that of

creating a prejudice. Whether the actions alleged to have been brought without probable cause were so brought, should, in fairness, be determined in this case with reference to the issues tendered in the alleged malicious prosecutions and not upon issues which might have been tendered and litigated therein, but were not.

In the examination of witnesses, particularly in the cross-examination of Frey, plaintiff's counsel repeatedly framed the questions so that facts reflecting on defendant were taken for granted, of which facts there was neither proof nor offer of proof, and which were not pertinent to any fair issue. It is impossible to read this record without coming to the conclusion that there was instilled into the minds of the jury an undue amount of passion and prejudice by counsel's manner of letting his questions testify to things which tended to place Frey in a disgraceful and dishonorable position, sometimes as to matters of a petty nature and of no bearing upon legitimate issues. Malone v. Stephenson, 94 Minn. 222, 102 N. W. 372. We deem it unnecessary to extend this opinion by reciting the many instances of a departure from good practice in this particular, feeling confident that the good sense of plaintiffs' attorney will not again let his zeal for his clients' cause carry him to the point where the other side is deprived of that fair trial, without passion and without prejudice, which is due every litigant, sinner as well as saint, in a court of justice. We may also remark that an abundance of vituperative adjectives are out of place in briefs in this court.

The verdict is very large. Plaintiffs had occupied Kamerer's premises for over a year with rent in arrears to the extent of $1,500, unless the same was offset by repairs allowed by the jury in the rent actions. Nothing had been paid upon the furniture purchase of $1,675 except $108. The damages to the business and reputation of plaintiffs are problematic, for within two months after the attachment was vacated the saloon license was transferred to another place where they again engaged in business. Whether plaintiffs were permanently deprived of any property of mentionable value, other than that purchased of defendant Kamerer and retained by the receiver appointed in the replevin action, is not made clear. In view of this situation and what has been stated with reference to the conduct of the trial and the errors pointed out, we conclude that the exception to an excessive verdict, rendered by the jury

under the influence of passion and prejudice, must be sustained; and a new trial should be had.

The judgment is reversed and a new trial is granted.