# STATE v. SHIRLEY GRESS.

84 N. W. (2d) 616.

August 2, 1957—No. 37,034.

*John F. Lord* and *Harold O'Loughlin,* for appellant.

*Miles Lord,* Attorney General, *Charles E. Houston,* Solicitor General, *James F. Lynch,* County Attorney, and *John P. Frank,* Assistant County Attorney, for respondent.

Nelson, Justice.

The defendant was convicted, upon a verdict of guilty, in the District Court of Ramsey County, of the crime of forgery in the second degree. Defendant appeals from the judgment.

Defendant was employed by the Liberty State Bank of St. Paul, Minnesota, on September 7, 1955, on which date she felt ill and requested permission to leave work early. She left at approximately 1:30 p. m. On September 9, 1955, an employee at the same bank discovered an irregular cashier's check that had been drawn on the bank September 7, 1955, cashed at the Commercial State Bank of St. Paul on the same date, and subsequently cleared and returned to the Liberty State Bank. There was testimony by state's witnesses that defendant had access to check blanks upon which cashier's checks are drawn. The check in question was, apparently, cashed one-half hour

after defendant's departure from the Liberty State Bank on September 7. A handwriting expert and the president of the bank testified that the handwriting on the forged check was that of defendant. Several handwriting samples of the defendant were admitted in evidence. The cashier and teller at the Commercial State Bank, called by the prosecution, could not identify the defendant as the person who cashed the check, but they were of the opinion that the check was cashed at their bank on September 7, 1955. The state's contention is that the defendant is the person who forged the handwriting on the cashier's check. The check bears date September 7, 1955, and shows the remitter to be one Jack Morgan. It is made payable to the order of one Joan Miller. The check contained a signature in the proper place and is endorsed "Joan Miller, 1425 St. Clair." All entries were typewritten except the date, signature, and endorsement. The check was admitted in evidence as an exhibit without objection. Officers and employees of the Liberty State Bank testified that the defendant had been employed by that bank between April 14, 1955, and September 23, 1955, in the bookkeeping department and also in training as a teller; that she was training as a teller on September 7, 1955. After the check was received at the Liberty State Bank on the morning of September 9 (no credit slip being on file), the employee in charge at the bank found the signature on the check to be unauthorized. Inquiries were made of bank employees as to who prepared the false instrument, but no one admitted the act.

The defendant took the witness stand voluntarily and testified in her own behalf. She denied the state's charge. The defendant did not introduce evidence tending in any way to show she was of good character. On cross-examination defendant, a single woman slightly over the age of 18 years, was examined as to her relations with one Richard Martinek, a married man. She had said nothing concerning her relations with Richard Martinek or any other man, nor had anyone made any mention of Richard Martinek. Upon cross-examination the prosecutor made inquiry as to various addresses where defendant had lived in St. Paul after which her relations with the said Richard Martinek was opened up. The state contends that defendant opened up the subject. The defense contends that the record shows clearly that it was the state

that introduced the line of inquiry; that the prosecuting attorney saw an opportunity to inject questions with regard to what may well be described as an immoral relationship which by innuendo would prejudice the jury against the defendant. This is what occurred:

"Q. When you went to 602 Mendota Street with whom did you live there?

"A. Richard Martinek.

"Q. Richard Martinek?

"Mr. Thompson: One moment, counsel, are you hard of hearing. Please strike the last answer and last question for the purpose of an objection.

"The Court: The reporter will not strike anything unless I order him to.

"Mr. Thompson: I ask the Court please order the reporter to strike the last question and answer for the purpose of an objection.

"The Court: Stricken.

"Mr. Thompson: Obviously counsel is intending to go into a line of interrogation which isn't proper, it is entirely irrelevant, unless he can make an offer of proof I object to any further testimony along that line on this particular subject.

"The Court: Motion denied and answer reinstated.

"Q. Who is Richard Martinek?

"A. He is a friend of mine.

"Q. When did you first meet Richard?

"A. I met him in September of 1954.

"Q. Where?

"A. In my home town.

"Q. That is Mandan?

"A. That is right.

"Q. At the time Richard was living with you was he a married man or a single man?

"A. He was a married man.

"Q. Did you also know his wife?

"A. No.

"Q. Did you later become acquainted with his wife?

"A. Yes, I did.

"Q. What is his wife's first name?

"A. De Ann.

"Q. As a matter of fact De Ann is the lady to whom you addressed two letters in evidence now or the portions thereof, is that correct?

"A. That is correct.

"Mr. Thompson: I repeat, this entire line of questioning is entirely irrelevant.

"The Court: Overruled.

"Q. Just for the record I have referred to portions of two letters, one of which has been received as State's Exhibit 11 and the other as State's Exhibit 12, on State's Exhibit 11 it says, Dear De Ann, is that the lady who is married to Richard Martinek, the man you were living with?

"A. That is correct."

The prosecutor later made a further reference to the relationship between the defendant and Richard Martinek as follows:

"Q. On that particular date were you also living with Richard Martinek?

"A. Yes, sir.

"Q. Did Richard have an automobile?

"A. Yes, sir.

"Q. What kind of an automobile?

"A. 1955 Mercury.

"Q. Was Richard employed during that time, September 7th?

"A. Yes, sir.

"Q. He worked when, day or night?

"A. Day.

"Q. Had there been occasions when he picked you up at work at the bank?

"A. Yes, sir.

"Q. How many times a week would he do that?

"A. Once a week.

"Q. Was it possible to call him and he would pick you up, is that how you arranged those meetings?

"A. No.

"Q. It was by pre-arrangement?

"A.   Yes, sir."

■   The record reveals that the subject was first developed by the prosecutor upon cross-examination; that it was immediately objected to by the defense counsel; and that the questions were answered only after the objection was overruled. The state contends that the defendant had opened the door to that line of cross-examination in testifying as to the various addresses where she had lived; that the inquiry was based upon collateral matters which the state had a right to inquire into; and that therefore the prosecutor's questions did not violate the rule which it is admitted firmly and universally establishes that the prosecution may not initially attack the defendant's character unless the accused puts his or her character in issue. The fact that an accused voluntarily takes the stand to testify in his own behalf does not put in issue his general character or propensities, but it opens up only the issue of credibility. State v. Silvers, 230 Minn. 12, 40 N. W. (2d) 630; State v. Clow, 215 Minn. 380, 10 N. W. (2d) 359; State v. Elijah, 206 Minn. 619, 289 N. W. 575; State v. Stockton, 181 Minn. 566, 233 N. W. 307; State v. Friend, 151 Minn. 138, 186 N. W. 241; State v. Nelson, 148 Minn. 285, 181 N. W. 850; 3 Wigmore, Evidence (3 ed.) §§ 983, 984, 1020; 1 Wigmore, Evidence (3 ed.) § 57.

In State v. Friend, 151 Minn. 138, 140, 186 N. W. 241, 242, Mr. Justice Dibell speaking for this court made the following comment:

"That evidence of other crimes has probative force is without question. It affects the judgment of the average juror, and of the trained legal mind of the lawyer and of the judge accustomed to scrutinize and weigh evidence. This prompts the remark of Judge Jones that 'other acts of criminality or immorality are not legally relevant, and should not be dragged in to prejudice the defendant or to create a probability of guilt.' 1 Jones, Ev. § 143. And it induces Dean Wigmore to remark upon the tendency of the trial tribunal, whether judge or jury, 'to take the proof of it as justifying a condemnation irrespective of guilt of the present charge,' and 'to believe the defendant guilty of the charge merely because he is a likely person to do such acts,' and 'to condemn, not because he is believed guilty of the present charge, but because he has escaped unpunished from other offenses.' 1 Wigmore, Ev. § 194. The rule is stated by Mr. Justice Dodge in Paulson v. State, 118 Wis.

89, 94 N. W. 771, to be that under the theory of criminal trials 'that evidence against him [the accused] should be confined to the very offense charged, and that neither general bad character nor commission of other specific disconnected acts, whether criminal or merely meretricious, could be proved against him.' This is the present settled rule of evidence in criminal trials in this state and in other common law jurisdictions."

■ The defendant as a witness is subject to impeachment. 3 Wigmore, Evidence (3 ed.) § 890; Note, 36 Minn. L. Rev. 734. What types of conduct may be introduced to affect his credibility is largely in the discretion of the trial court. However, misconduct that may prejudice the jury and yet be remote to questions of veracity should not be admitted since the risk of harm far exceeds the benefits to be gained by its admission. State v. Nelson, *supra*.

In State v. Clow, Mr. Justice Youngdahl, commenting on a similar situation with regard to cross-examination of the defendant, said (215 Minn. 387, 10 N. W. [2d] 362):

"* * * We fail to see any relevancy between the fact that defendant's former wives obtained divorces from him and his credibility as a witness. We appreciate that we have gone quite far in State v. Tsiolis, 202 Minn. 117, 277 N. W. 409, and State v. McTague, 190 Minn. 449, 252 N. W. 446, in approving cross-examination of a defendant in a criminal case and permitting inquiry into his family history. *Although ordinarily the extent of cross-examination is within the discretion of the trial court, there is a limit beyond which questioning should not proceed, and in our opinion it went beyond reasonable limits in the instant case.* See 3 Wigmore, Evidence (3 ed.) §§ 983, 984. Moreover, where, as here, the evidence relied upon by the state was largely circumstantial, prejudice is more likely to arise in the admission of this type of testimony." (Italics supplied.)

After the foregoing matters had been brought out on cross-examination defense counsel recalled the defendant as a witness and had her explain that she had first met Richard Martinek in her home town of Mandan, North Dakota, in September 1953 at a time when she was 17 years old and living with her parents; that Richard Martinek was at

that time working as a pipefitter in Mandan and that during this period she went with him for two and one-half or three months, during which time she did not know he was married and during which time he proposed marriage to her; that following this Richard Martinek went to work in the vicinity of St. Paul and asked the defendant to come to St. Paul; that she did come to St. Paul to be with Richard Martinek and intended to marry him. She stated, however, that she subsequently found out he was married and broke off relations with him; that he has attempted to see her since; and that she still is in love with him. Defendant further testified that to the best of her knowledge divorce proceedings were pending between Richard Martinek and his wife. Counsel for the defense moved for a dismissal at the close of the evidence upon the grounds that error had been committed in permitting inquiry into defendant's character by way of specific acts or conduct not relevant to the charge of forgery and prejudicing the defendant in the eyes of the jury, quoting in support of his motion from 5 Dunnell, Dig. (3 ed.) § 2458, which emphasizes the rule that the accusers cannot put the defendant's character at issue by the defendant becoming a witness in his or her own behalf, except as to his or her truthfulness.

Following the prosecutor's argument to the jury, defense counsel again moved for a dismissal on the ground that the prosecutor in his argument made reference to certain exhibits connected with what the defense herein claims to have been the erroneous testimony permitted in cross-examination, again urging its prejudicial effect upon the minds of the jury. The record is clear that objections made were timely as to the line of questioning with which defendant here takes issue and that under the circumstances it is properly here for review.

■ This defendant is guaranteed, as is every defendant, a speedy and public trial by an impartial jury and due process in all criminal cases under Minn. Const. art. 1, §§ 6 and 7. We have said emphatically that the fact that the accused takes the stand to testify does not put in issue his or her general character or propensities; that it opens up only the issue of credibility. State v. Nelson, *supra;* State v. Silvers, *supra;* 5 Dunnell, Dig. (3 ed.) § 2458. On the issue of credibility, prior convictions under state or Federal law are admissible, but, unless

the accused offers evidence of good character, the state may not attack his or her character in respect to the trait involved in the crime alleged at bar. The rule is also well established that the cross-examiner who inquires into collateral matters to affect the witness' credibility is bound by the answers he gets and that the state may not, in such a case, prove facts contradicting the answers. We have borne these principles in mind in examining the record herein. State v. Silvers, *supra.* Again this court has said that, when the defendant's character is put in issue, the state cannot rebut it by showing specific instances of wrongdoing. It must rebut by showing bad character. The reasons which induce the rejection of evidence of specific acts is based in part on the same general policy which excludes evidence of bad character unless the accused puts his or her character in issue. State v. Nelson, *supra;* State v. Silvers, *supra.* In the case at bar the defendant's character in respect of the trait involved in the crime charged was not in issue. As was said by Mr. Justice Dibell in State v. Nelson, 148 Minn. 285, 297, 181 N. W. 850, 855: "Evidence of bad character is not rejected because it is logically irrelevant, and without probative force, but upon sound reasons of policy. Evidence of good character is logically and legally relevant, and evidence of bad character is of probative force. It is not legally relevant because courts, for reasons of policy, decline to hold it so." Mr. Justice Dibell followed this statement by quoting the settled rule from Wigmore (1 Wigmore, Evidence [3 ed.] § 57):

"This policy of the Anglo-American law is more or less due to the inborn sporting instinct of Anglo-Normandom—the instinct of giving the game fair play even at the expense of efficiency of procedure. This instinct asserts itself in other departments of our trial-law to much less advantage. But, as a pure question of policy, the doctrine is and can be supported as one better calculated than the opposite to lead to just verdicts. The deep tendency of human nature to punish, not because our victim is guilty this time, but because he is a bad man and may as well be condemned now that he is caught, is a tendency which cannot fail to operate with any jury, in or out of Court. * * *

"The rule, then, firmly and universally established in policy and tradition, is that the prosecution may not initially attack the defendant's

character."

■ An examination of the defendant's assignments of error indicates that in general they are based upon the contention that the defendant's right to a fair and impartial trial was prejudiced by the admission into evidence on cross-examination of matters tending to show that she was guilty of sexual immorality and thus a bad character without her good character having been put in issue; that therefore the prosecution was not authorized to initially attack the defendant's character either directly or by way of cross-examination. This court has in general adopted the rule that, unless circumstances and relevancy exist justifying an exception to the rule, a witness may not be cross-examined as to specific meretricious acts or acts indicating sexual immorality when not relevant to the crime charged for the purpose of affecting his or her veracity, and that questions on cross-examination tending to show the general immorality of the witness by specific acts of immorality should never be allowed in any case for the mere purpose of prejudicing, discrediting, or impeaching the witness.

■ The evidence elicited on cross-examination in the instant case tending to indicate illicit relations between the defendant and the married man has no relevancy to the charge of forgery and therefore cannot come under the exceptions to the general rule that permits evidence of offenses or crimes of a similar nature indicating a general scheme carried on in violation of the law. It is clear from our decisions that facts must exist furnishing proof of a common scheme or plan before the evidence as to related offenses or crimes will be received. Such evidence is ordinarily of such prejudicial nature that in the absence of proof fairly establishing a common scheme, plan, or pattern, the evidence ought not to be admitted. See, State v. Haney, 219 Minn. 518, 18 N. W. (2d) 315; State v. DePauw, 246 Minn. 91, 74 N. W. (2d) 297.

Viewing the evidence as presented by the record it is clear that on the question of guilt it was conflicting, the state's witnesses testifying to the commission of the offense and the defendant denying it. There was evidence of facts of probative force. We reach the conclusion after a careful consideration of the evidence that, if the alleged misconduct

of the prosecutor in proceeding to cross-examine the defendant on specific items of alleged misconduct were eliminated, the evidence would yet be sufficient to sustain the verdict within the rule applicable to such questions when raised in this court as contended for on the part of the state in citing State v. Nelson, 91 Minn. 143, 97 N. W. 652, and other cases upon which it relies. The state contends that where the evidence clearly shows the guilt of the defendant, alleged errors in affecting his constitutional and substantial rights are not grounds for a new trial; that a new trial should be granted only where the substantial rights of the defendant have been so violated as to make it reasonably clear that a fair trial was not had. We cannot agree with the state's contentions as applied to the record in the instant case. The cases cited by the state in support of its contentions are clearly distinguishable upon the facts and are not controlling in the instant case. We think it may be fairly said in the case at bar that, if the jury had found the defendant not guilty, the verdict could not have been fairly criticized. If therefore the defendant was subjected to a cross-examination not proper under the circumstances and by reason thereof she did not have a fair trial, there must be a new trial for the reason that the defendant's guilt was not so clearly shown that we would be justified in saying that even if the cross-examination was improper and not relevant to the crime charged it was not prejudicial[1] to her rights as a defendant.

■ Ordinarily we would say that the extent to which a witness may be cross-examined as to matters not relevant to the issue for the purpose of affecting his credibility rests largely in the discretion of the trial court, but this court has made it clear that the discretion, however, should not go so far as to sanction an attempt to discredit and disgrace a witness by innuendo instead of competent proof. Malone v. Stephenson, 94 Minn. 222, 102 N. W. 372. We have also held that the extent to which testimony may be received to affect credibility thereof upon collateral matters is largely for the trial court. Gardner v. Kellogg, 23 Minn. 463; State v. Quirk, 101 Minn. 334, 112 N. W. 409; State v. Phillips, 105 Minn. 375, 117 N. W. 508; 20 Dunnell,

---

[1]State v. Clark, 114 Minn. 342, 131 N. W. 369.

Dig. (3 ed) § 10348; State v. Taylor, 144 Minn. 377, 175 N. W. 615.

The insinuation from the cross-examination of the defendant as to her relations with Richard Martinek was that she was a bad woman because of her association with this man who was having trouble in his domestic relations; that the defendant was a husband stealer; and that the evidence if admitted would prove it. To the defendant, charged with the crime of forgery, it was necessarily prejudicial and could not help but give the jury the notion that a young woman, such as she was suggested by innuendo to be, was more likely to commit the crime with which she was charged. The questions asked by the cross-examiner could only remotely affect the defendant's credibility. They were, however, most likely to be applied by the jury unfavorably to the accused in their consideration of the issues involved and not restricted to their proper scope. Under all the circumstances and in the interest of justice a new trial should be had. This court in State v. Haney, *supra,* made it clear that the state is not permitted by means of insinuation or innuendo of incompetent and improper questions to plant in the minds of the jurors a prejudicial belief in the existence of evidence which is otherwise not admissible and thereby prevent the defendant from having a fair trial. State v. Elijah, *supra;* State v. Clow, *supra.*

It was made clear in State v. Silvers, *supra,* that, even where the prosecuting attorney asks incompetent or irrelevant questions calculated to prejudice defendant in the eyes of the jury, his conduct constitutes reversible error even though objections thereto are sustained and even though the questions were asked in good faith by the prosecutor. Good faith in asking improper questions is wholly irrelevant to the problem since the rights of an accused will be jeopardized as much by an improper question asked in good faith as by one asked with a vicious purpose. If the effect herein was to prejudice the defendant in her constitutional right to a fair trial, she is entitled to a new trial. Petruschke v. Kamerer, 131 Minn. 320, 155 N. W. 205; State v. Phillips, *supra;* State v. Peterson, 98 Minn. 210, 108 N. W. 6.

■ The state has contended that it came upon the evidence which led to the relations between Richard Martinek and the accused more or less by chance and that it followed up on that specific instance to show lack of truthfulness on the part of the defendant. Other portions

of her cross-examination indicated that she had in applying for various jobs made untruthful statements as to her age, amount of schooling, etc. The state therefore argues that when she attempted to explain how her relationship with Richard Martinek occurred upon redirect examination she thereby waived any objection which would support her claim that the asking of the questions on cross-examination was prejudicial. It is clear, however that an error committed in admitting evidence on behalf of the state as to the bad character of the accused is never cured by submission of evidence in rebuttal thereof and this needs no further comment. State v. Beckner, 194 Mo. 281, 91 S. W. 892; 20 Am. Jur., Evidence, § 325. Defendant's counsel had made timely objections. He was not bound to continue his objections, for further persistency, in view of the rulings of the court, could serve no other purpose than to emphasize the prejudicial effect of the questions being asked. The accused therefore did not waive her objections to the evidence introduced by the state's cross-examination assailing her character by offering evidence in explanation of how that relationship occurred upon redirect examination. She was not there by her own choice. Under the circumstances no other course was left open to her. The attempted explanation by the accused upon redirect examination to either mitigate or disprove the effect of the cross-examination was her prerogative without losing the force and effectiveness of the objections theretofore made to that specific line of questioning. She was not thereby deprived of the right to a new trial if the evidence elicited on the cross-examination was improper and prejudicial to the extent of depriving her of a fair trial. While ordinarily the extent of the cross-examination is within the discretion of the trial court, there is always a limit beyond which questioning should not proceed. In our opinion it was permitted to go beyond reasonable limits in the instant case. Courts have recognized that where the evidence relied upon by the state is largely circumstantial, prejudice is more likely to arise in the admission of the type of testimony admitted on the cross-examination here. It is the duty of prosecuting authorities as well as of courts to see that the accused has a fair trial.

Having reached the conclusion that the evidence elicited on cross-examination from this defendant in the face of timely and proper

objections was improper and prejudicial to the extent of warranting a new trial, we also conclude that the objections should have been sustained and the evidence should not have been received.

The judgment appealed from is reversed and a new trial is granted. Reversed.