## STATE v. HUGH EDWARD FLOWERS.

114 N. W. (2d) 78.

March 16, 1962—No. 38,288.

*Hugh Edward Flowers,* pro se, for appellant.

*Walter F. Mondale,* Attorney General, *Charles E. Houston,* Solicitor General, *William B. Randall,* County Attorney, and *Stephen L. Maxwell,* Assistant County Attorney, for respondent.

OTIS, JUSTICE.

The defendant, Hugh Edward Flowers, was charged with second-degree assault arising out of an altercation with one Darwin Morrow on March 26, 1960, in the city of St. Paul. The defendant having pled not guilty was tried and convicted in the District Court of Ramsey County and appeals from that conviction.

While the evidence of defendant's guilt is strong, we hold that the cross-examination of defendant was so manifestly improper and prejudicial as to require a new trial.

On the direct examination of defendant, his counsel elicited the following testimony:

"Q Did you ever kick or strike Darwin Morrow on the evening of March 26th?

"A No, I haven't kicked, struck, Darwin Morrow on March 26th.

As a matter of fact, I have never kicked or struck, kicked no man, period."

The prosecutor seized on this statement to put defendant's character in issue, and on cross-examination he asked:

"Q   Mr. Flowers, on Friday night, March 25th, 1960, didn't you take and break a broom handle over the back of Alice Smith?

"A   Sir, am I on trial for Alice Smith or Darwin Morrow?"

The court overruled a prompt objection to this line of examination on the ground that it was proper impeachment of defendant's statement that he had never struck or kicked any man. The prosecutor continued his cross-examination with the following questions:

"Q   And isn't it a fact, Mr. Flowers, that after you broke the broom handle over the back of Alice Smith, you pulled a knife on her?"

Again defendant's objection was overruled and he answered:

"It's not a fact."

Whereupon the prosecutor asked defendant:

"Q   And isn't it a fact that after you pulled the knife on her, that she attempted to grab the knife and got cut on her hand?"

To which defendant answered:

"A   It's not a fact, period."

Later in the cross-examination the defendant was asked by the prosecutor:

"Mr. Flowers, while you were in the armed services, did you ever assault anyone?" to which question an objection was sustained.

Although Alice Smith was called as a witness by the state, she was asked no questions whatever about defendant's alleged assault on her. Indeed, absolutely no evidence was introduced to support such a charge or to sustain the prosecutor's suggestion that defendant committed a similar offense while in military service.

■   The prosecutor's conduct in asking questions of an accusatory nature, unsupported by any evidence, denied defendant a fair trial under the principles we laid down in State v. Nelson, 148 Minn. 285,

299, 181 N. W. 850, 856. In that case the prosecutor on cross-examination asked defendant:

"At that time did you also tell Mr. Engstran you didn't have to be afraid of anyone, that you had a gun on you at that time and you would fight anybody?"

To which the defendant replied:

"I won't fight anybody. I guess there is somebody knows me that I don't want to fight."

He also testified:

"Q. So, Mr. Nelson, you will bring men here who will testify? A. That know me since I come over and they know that I am a man that don't want to fight."

We there stated:

"* * * There can be no substantial claim that the defendant's assertion that he was not a fighting man, and would bring witnesses to show that he was not, put his character in issue, or justified showing troubles with others or threats or offenses against them."

We reversed an order denying a new trial because evidence was received which was designed to prove defendant was a quarrelsome person who had previously threatened to kill other people. In so doing we observed (148 Minn. 297, 181 N. W. 856):

"* * * Nor did the giving of an irresponsive answer—stating as witnesses constantly do what they claim the fact is instead of what was said—open his character to investigation on cross-examination or on rebuttal by evidence of specific acts."

We said that even if defendant's character had been put in issue, the state could not show specific instances of wrongdoing by way of rebuttal but would be confined to a showing of bad character, quoting Dean Wigmore as follows (148 Minn. 297, 181 N. W. 855):

" '* * * The deep tendency of human nature to punish, not because our victim is guilty this time, but because he is a bad man and may as well be condemned now that he is caught, is a tendency

which cannot help operating with any jury, in or out of court. * * *'
1 Wigmore, Ev. § 57.

\* \* \* \* \*

" '* * * The reasons [for rejecting evidence of specific acts of previous misconduct by defendant] thus marshalled in various forms are reducible to three: (1) The over-strong tendency to believe the defendant guilty of the charge merely because he is a likely person to do such acts; (2) the tendency to condemn, not because he is believed guilty of the present charge, but because he has escaped unpunished from other offenses; (3) the injustice of attacking one necessarily unprepared to demonstrate that the attacking evidence is fabricated. * * *' 1 Wigmore, Ev. §§ 193, 194."

To the same effect is State v. Fitchette, 88 Minn. 145, 92 N. W. 527; State v. Cole, 240 Minn. 52, 58, 59 N. W. (2d) 919, 922.

■ This court has held that even where objection is sustained, the mere asking of the question is sufficiently damaging to require a reversal. A leading case on this question, also involving an assault, is State v. Silvers, 230 Minn. 12, 40 N. W. (2d) 630. There the state attempted to introduce evidence of other assaults to impeach the defendant's wife, who denied on cross-examination that she had ever been present when defendant had struck anyone. This was followed by an inquiry as to whether, more specifically, defendant had ever struck her. In reversing an order denying defendant's motion for a new trial we held (230 Minn. 19, 40 N. W. [2d] 634):

"'* * * Although the court sustained defendant's objection to the question, it was prejudicial misconduct to ask it, since it was calculated to arouse prejudice in the minds of the jury against defendant. Obviously, nothing would have prejudiced the jury more effectively against defendant than to give it the impression that he was a wife beater. *Jurors, to their credit, are likely to regard a blow struck a woman as wholly inexcusable and discreditable to the offender—* doubly so if the woman is offender's wife. Since the prosecuting attorney was a public official, the jury naturally thought he must have evidence to support his innuendoes.

"The authorities support the asking of such prejudicial questions as ground for new trial." (Italics supplied.)

In the instant case, as in the Silvers case, the prosecutor's questions regarding the attack on Alice Smith were obviously calculated to suggest to the jury that anyone brutal enough to beat a woman should be punished for that offense if not for this.

Even if the facts in this case had justified a finding that the defendant put his own character in issue, it was clearly error for the prosecutor to ask questions in a form which disparaged defendant's character without supporting such charges by competent evidence. State v. Gress, 250 Minn. 337, 347, 84 N. W. (2d) 616, 624; State v. Gulbrandsen, 238 Minn. 508, 515, 57 N. W. (2d) 419, 424; Petruschke v. Kamerer, 131 Minn. 320, 155 N. W. 205. We have consistently condemned such conduct. State v. Nelson, 148 Minn. 285, 296, 181 N. W. 850, 854, expressly disapproved cross-examination which attempted to discredit the defendant by sneers and innuendoes. The court there noted that questions which assume the existence of damaging facts may be put in such a manner, and with such persistency and show of proof, as to impress a jury that there must be something wrong, even though the defendant fully denies it and there is no other evidence. "[T]he questions, and not the answers, were what the prosecution thought important."

■ Where the evidence of guilt is strong, there is a temptation on the part of both trial and appellate courts to hold that the misconduct, however serious, is not prejudicial because the result would have been the same even if the errors had not occurred. However, our court on several occasions has exposed the fallacy of this philosophy and rejected it. In State v. Hutchison, 121 Minn. 405, 409, 141 N. W. 483, 484, we said:

"We have a natural hesitation to reverse a conviction on errors in the instructions or in the admission of evidence, where the evidence of guilt is strong. And the doubt here is whether we ought to say that the result might have been affected by the erroneous instructions. But to reach the conclusions that the errrors were without prejudice we must hold that the guilt of defendant was conclusively proven. *This, in effect, is trying defendant in this court, and depriving him of his right to a trial by jury.*" (Italics supplied.)

More recently this court reaffirmed its position and reversed an order denying a new trial, because of misconduct on the part of the prosecutor in State v. Reardon, 245 Minn. 509, 513, 73 N. W. (2d) 192, 195, stating:

"The state contends that whether or not there was prejudice requiring a new trial is determined by whether or not the error affected the result. There is authority for this proposition—but where the constitutional right to a fair trial is denied, we are unwilling to adopt a theory which in effect assumes that, where proof is strong, due process may be suspended. Due process as guaranteed by the Minnesota and Federal Constitutions includes within its broad protection the right of a person to be tried according to law and the evidence in the case. Holden v. Hardy, 169 U. S. 366, 18 S. Ct. 383, 42 L. ed. 780; Lowery v. State, 21 Ala. App. 352, 108 So. 351. It is true there is cogent evidence to support the verdict; and it may be expected that on a second trial the result would be the same. But to allow factually strong cases to erode such a basic right is to deny the existence of the right."

In support of its decision in the Reardon case, the court cited Boyd v. United States, 142 U. S. 450, 12 S. Ct. 292, 35 L. ed. 1077. There the defendants were charged with murder, but evidence was received with respect to robberies previously committed by them. The trial court attempted to restrict the jury's consideration of the prior offenses to their bearing on identity and admonished against the use of this evidence as a make-weight to prove defendant's guilt in connection with the murder charge. The United States Supreme Court in reversing the conviction and ordering a new trial stated (142 U. S. 458, 12 S. Ct. 295, 35 L. ed. 1080):

"* * * Those robberies may have been committed by the defendants in March, and yet they may have been innocent of the murder of Dansby in April. Proof of them only tended to prejudice the defendants with the jurors, to draw their minds away from the real issue, and to produce the impression that they were wretches whose lives were of no value to the community, and who were not entitled to the full benefit of the rules prescribed by law for the trial of human beings charged with crime involving the punishment of death. Upon a

careful scrutiny of the record we are constrained to hold that, in at least the particulars to which we have adverted, those rules were not observed at the trial below. However depraved in character, and however full of crime their past lives may have been, the defendants were entitled to be tried upon competent evidence, and only for the offense charged."

It is obvious from a reading of the record that the defendant is an uneducated person, given to the use of colorful and emphatic language common to persons of his background. As we pointed out in the Nelson case, a sweeping denial of the defendant's propensities to fight cannot under any circumstances be used by the prosecution as an invitation to put defendant's character in issue by introducing specific acts of misconduct under the guise of impeachment. It is even more prejudicial when a prosecutor makes damning accusations in the cross-examination which are wholly unsupported by the evidence and uncorrected in the charge. It is not our prerogative to speculate on whether defendant would have been convicted or acquitted had he been accorded a fair trial, and to dispense justice accordingly. We have criticized the practice of courts functioning as super-juries and decline to do so ourselves. In any case, it is clearly our overriding duty to protect from unwarranted attack the fundamental rights of the guilty as well as the innocent. State v. Haney, 222 Minn. 124, 125, 23 N. W. (2d) 369, 370.

Reversed and remanded for a new trial.

MR. JUSTICE ROGOSHESKE, not having been a member of the court at the time of submission, took no part in the consideration or decision of this case.