*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1124**

State of Minnesota,
Respondent,

vs.

Gentry Allan Needham,
Appellant.

**Filed July 20, 2015
Affirmed
Schellhas, Judge**

Olmsted County District Court
File No. 55-CR-13-4686

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Mark A. Ostrem, Olmsted County Attorney, James P. Spencer, Assistant County Attorney, Rochester, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Steven P. Russett, Assistant Public Defender, St. Paul, Minnesota (for appellant)

        Considered and decided by Larkin, Presiding Judge; Schellhas, Judge; and Reyes, Judge.

UNPUBLISHED OPINION

**SCHELLHAS**, Judge

Appellant challenges his conviction of aiding and abetting fifth-degree controlled-substance crime, arguing that the district court erred by denying his suppression motion and admitting *Spreigl* and character evidence. We affirm.

**FACTS**

Appellant Gentry Needham and Todd Mielke checked into a Rochester hotel room on the afternoon of July 17, 2013. Neither man appeared to have any luggage; the hotel clerk thought that "[s]omething seemed off" and searched Needham's name on Google. The clerk discovered a couple of mug shots and a warrant, which she believed to be active, and alerted hotel management, who contacted police. Officers Edward Fritz and William Weiss responded to the call. Officer Fritz confirmed that Needham had an active arrest warrant, and hotel management asked the officers to eject Needham.

The officers went to Needham's room, along with hotel management, and knocked on the door. An occupant asked who was knocking, and Officer Fritz said, "The police." The officers then heard someone lock the door with the deadbolt and scurry away from the door, and hotel management saw the window blinds move, as if someone had looked through them. The officers demanded that the occupants open the door, and an occupant, later identified as Needham, complied. The officers arrested Needham, and hotel management informed him that he was not welcome to return to his hotel room.

Through the open door to Needham's hotel room, the officers observed hypodermic needles on a TV stand. Hotel management requested that Officer Fritz enter

the room, remove the needles, and remove any other property belonging to Needham and Mielke. Sticking out of a vent in the bathroom at eye level, Officer Fritz observed a plastic baggie with two separate baggies inside of it, one containing marijuana and the other containing methamphetamine. Finding no drugs on Mielke's person or in a bag that had been delivered to the hotel for Mielke, the officers did not arrest Mielke.

Respondent State of Minnesota charged Needham with fifth-degree controlled-substance crime (possession of methamphetamine) and possession of a small amount of marijuana, and Needham moved to suppress all evidence against him on the basis that the warrantless search of the hotel room was unlawful. The district court denied Needham's motion.

The state amended its complaint, adding a charge of aiding and abetting fifth-degree controlled-substance crime (possession of methamphetamine). At trial, the state introduced as *Spreigl* evidence Needham's 2003 conviction of first-degree controlled-substance crime (manufacture of methamphetamine) and impeached Needham with the conviction, along with three unspecified felony convictions and with two false-name convictions. The jury found Needham guilty of aiding and abetting fifth-degree controlled-substance crime and not guilty of the remaining two charges. The court sentenced Needham to the presumptive sentence of 24 months' imprisonment.

This appeal follows.

3

## DECISION

*Needham's suppression motion*

The district court denied Needham's suppression motion, concluding that Needham had no reasonable expectation of privacy in the hotel room and alternatively finding that the evidence inevitably would have been discovered. Needham attributes error to both of these determinations. "When reviewing a district court's pretrial order on a motion to suppress evidence, [an appellate court] review[s] the district court's factual findings under a clearly erroneous standard and the district court's legal determinations de novo." *State v. Gauster*, 752 N.W.2d 496, 502 (Minn. 2008) (quotation omitted).

Both the United States Constitution and the Minnesota Constitution guarantee "[t]he right of the people to be secure in their persons, houses, papers, and effects" against "unreasonable searches and seizures." U.S. Const. amend. IV; Minn. Const. art. I, § 10. These "protections are not triggered unless an individual has a legitimate expectation of privacy in the invaded space." *State v. Perkins*, 588 N.W.2d 491, 492 (Minn. 1999) (*Perkins II*). As a hotel guest, Needham was entitled to a reasonable expectation of privacy in his hotel room. *See State v. Perkins*, 582 N.W.2d 876, 879 (Minn. 1998) (*Perkins I*) ("If Perkins was a guest in Room 300 he presumably was entitled to a reasonable expectation of privacy . . . ."); *see also State v. Gray*, 456 N.W.2d 251, 255 (Minn. 1990) (stating that "defendant clearly had a legitimate expectation of privacy in the motel room, which is necessary for a protectible fourth amendment interest").

4

But here, the police officers were aware of an outstanding warrant for Needham's arrest, and the parties agree that the valid arrest warrant implicitly granted police the limited authority to enter Needham's hotel room when police had a reason to believe that Needham was in the room. *See State v. Williams*, 409 N.W.2d 553, 555 (Minn. App. 1987) ("A valid arrest warrant implicitly grants police the limited authority to enter a suspect's residence 'when there is reason to believe the suspect is within.'" (quoting *Payton v. New York*, 445 U.S. 573, 603, 100 S. Ct. 1371, 1388 (1980))). And the parties agree that the arrest warrant itself did not justify a further search of Needham's hotel room if he maintained a reasonable expectation of privacy therein. *See Williams*, 409 N.W.2d at 555 ("An arrest warrant does not justify the routine search of a room . . . . These searches, in the absence of well-recognized exceptions (consent, emergency, or incident to arrest), may be made only under the authority of a search warrant.").

What the parties dispute is whether Needham, as a result of an ejection under Minn. Stat. § 327.73, lost his reasonable expectation of privacy in the hotel room and his standing to assert a violation of the constitutional protections against unreasonable searches. In *Perkins II*, the Minnesota Supreme Court noted that "even a reasonable expectation of privacy [of a hotel guest] may be waived if a defendant's conduct, objectively viewed in light of the totality of the circumstances, mandates the conclusion that any expectation of privacy was unreasonable." 588 N.W.2d at 493 (quotation omitted). In that case, the supreme court concluded that the defendant "lost any reasonable expectation of privacy in the hotel room" by "sign[ing] a registration card that stated that guests who caused a disturbance would be asked to leave" and then failing to

5

discontinue the excessive noise in his room despite two warnings from the hotel manager. *Id.* at 492–93. In addressing Perkins's expectation of privacy, the supreme court noted that the district court had looked to a federal case, *United States v. Rambo*, 789 F.2d 1289 (8th Cir. 1986), "which, under similar circumstances, examined the effect of Minnesota's 'undesirable guest statute,' Minn. Stat. § 327.73, subd. 1(2), on the privacy interests of evicted hotel guests." *Id.* at 492.

In *Rambo*, the United States Court of Appeals for the Eighth Circuit stated, "When the rental period expires and control reverts to the hotel management, a hotel employee may consent to a room search by police." 789 F.2d at 1295−96 & n.7. Similarly, in *United States v. Molsbarger*, 551 F.3d 809, 811 (8th Cir. 2009), the Eighth Circuit noted that "[j]ustifiable eviction terminates a hotel occupant's reasonable expectation of privacy in the room." "Disruptive, unauthorized conduct in a hotel room invites intervention from management and termination of the rental agreement. Thus, an individual 'cannot assert an expectation of being free from police intrusion upon his solitude and privacy in a place from which he has been justifiably expelled.'" *Id.* (quoting *Rambo*, 789 F.2d at 1296).

Needham argues that the hotel ejected him because of the arrest warrant and that Minnesota Statutes section 327.73 does not list the existence of an arrest warrant as a ground for ejection. Section 327.73 provides that:

> An innkeeper may remove or cause to be removed from a hotel a guest or other person who:
> . . . .
> (3) the innkeeper reasonably believes is using the premises for the unlawful possession or use of controlled substances by the person in violation of chapter 152 . . . ; [or]
> . . . .

6

(5) violates any federal, state, or local laws, ordinances, or rules relating to the hotel . . . .

Minn. Stat. § 327.73, subd. 1(a) (2012). Here, although hotel management requested that the police officers eject Needham because of the existence of the arrest warrant, hotel management actually did not eject Needham until after Officer Fritz informed management about the hypodermic needles in Needham's hotel room. Officer Fritz testified that his search of the hotel room commenced after he informed management of the hypodermic needles and was instructed to retrieve them. We therefore conclude that, irrespective of the arrest warrant, the hotel justifiably ejected Needham from the hotel room, along with Mielke, an unregistered guest, following Needham's arrest and before the police officers entered the hotel room and conducted a search.

Needham also argues that because the hotel did not refund his payment, the ejection was not lawful. But Needham offers no authority for the proposition that ejection can only occur if a prepayment is refunded, and we have found no such authority. We conclude that, as a result of his justifiable ejection under Minn. Stat. § 327.73, Needham lost his reasonable expectation of privacy in the hotel room and his standing to assert a violation of the constitutional protections against unreasonable searches. The district court therefore did not err by denying Needham's motion to suppress the drugs on the ground that he had no reasonable expectation of privacy.

Because we affirm the district court's denial of Needham's suppression motion on the ground that he had no reasonable expectation of privacy, we do not reach the court's alternative, inevitable-discovery ground for denying the motion.

7

**Spreigl** *evidence*

The district court admitted Needham's 2003 controlled-substance conviction as *Spreigl* evidence over Needham's objection. Needham argues that the court thereby committed reversible error. "To prevail on [a] *Spreigl* argument, [a defendant] must show that the trial court abused its discretion by admitting the evidence and that the erroneous admission was prejudicial." *See State v. Campbell*, 861 N.W.2d 95, 102 (Minn. 2015). Evidence of a defendant's prior crimes, wrongs, or acts "is inadmissible to prove a defendant's character, but may be admitted to show motive, intent, absence of mistake, identity, or plan." *Id.*; *see also* Minn. R. Evid. 404(b). For such evidence to be admitted:

> (1) notice [must be] given that the state intends to use the evidence; (2) the state [must] clearly indicate[] what the evidence is being offered to prove; (3) the evidence [must be] clear and convincing that the defendant participated in the other [act]; (4) the . . . evidence [must be] relevant and material to the state's case; and (5) the probative value of the . . . evidence [must] not [be] outweighed by its potential for unfair prejudice.

*State v. Kennedy*, 585 N.W.2d 385, 389 (Minn. 1998).

Needham first argues that the district court erred by failing to identify the precise fact to which the *Spreigl* evidence was relevant. "In assessing the probative value and need for the evidence, the district court must identify the precise disputed fact to which the *Spreigl* evidence would be relevant." *State v. Ness*, 707 N.W.2d 676, 686 (Minn. 2006) (quotation omitted). "This entails isolating the consequential fact for which the evidence is offered, and then determining the relationship of the offered evidence to that fact and the relationship of the consequential fact to the disputed issues in the case." *Id.*

Here, the state argued that the *Spreigl* evidence would be used to prove Needham's culpable knowledge and intent with regard to the methamphetamine, and the court stated that the *Spreigl* evidence "certainly shows lack of mistake, knowledge and common plan or scheme." Needham's knowledge about the presence of drugs and the purpose for renting the hotel room were at issue. Although the court did not pinpoint the disputed fact to which the *Spreigl* evidence would be relevant, we conclude that the court adequately identified permissible purposes for the admission of *Spreigl* evidence that was relevant to disputed issues. *See Campbell*, 861 N.W.2d at 102 (stating that *Spreigl* evidence "may be admitted to show motive, intent, absence of mistake, identity, or plan").

And even if the district court erred by admitting the *Spreigl* evidence, we will affirm unless Needham "can establish that he was prejudiced by the erroneous admission of the evidence." *See State v. Welle*, ___ N.W.2d ___, ___, 2015 WL 3875372, at *6 (Minn. June 24, 2015). "[An appellate court's] role is to examine the entire trial record and determine whether there is a reasonable possibility that the wrongfully admitted evidence significantly affected the verdict." *Id.* (quotation omitted). Based on our reading of the record, which we have summarized here, we are satisfied that no reasonable possibility exists that any error by the district court in admitting the 2003 controlled-substance conviction significantly affected the verdict, and that any error was harmless beyond a reasonable doubt.

In reaching this conclusion, we are influenced by a number of factors. Needham had a weak defense. The state presented overwhelming evidence of Needham's

knowledge of and involvement in the possession of methamphetamine in the hotel room on July 17, 2013. Mielke testified that Needham not only knew about the drugs but also "participate[d] in shooting up meth with [him]." Needham argues that the prosecutor dwelled on the *Spreigl* evidence in closing argument, but he points only to a single statement—"we know that the defendant has used methamphetamine." This statement makes no reference to Needham's 2003 controlled-substance conviction, which involved manufacturing of methamphetamine. The record reflects that the prosecutor did not dwell on the *Spreigl* evidence. Moreover, the district court cautioned the jury to limit the use of the *Spreigl* evidence and not to convict based on any prior conviction. We determine that the court's instructions mitigated the harm from any erroneous admission of *Spreigl* evidence. *See Campbell*, 861 N.W.2d at 103 ("[Appellate courts] presume that the jury followed the[ district court's limiting] instructions.").

*Character evidence*

The prosecutor questioned Needham without objection about his history of drug use. Needham argues that the district court plainly erred by allowing the state to elicit evidence regarding his history of drug use. When no objection is made to the admission of testimony, "[an appellate court's] review is under the plain error standard." *See State v. Strommen*, 648 N.W.2d 681, 686 (Minn. 2002). Under that test, there must be "(1) error; (2) that is plain; and (3) the error must affect substantial rights." *State v. Griller*, 583 N.W.2d 736, 740 (Minn. 1998). "If the[] three prongs are met, the appellate court then assesses whether it should address the error to ensure fairness and the integrity of the judicial proceedings." *Id.*

Needham argues that he did not place his character at issue and that the admission of evidence regarding his history of drug use was plain error in violation of Minn. R. Evid. 404(a). "In a criminal prosecution, a prosecutor may not attack the character of a defendant until the defendant puts his or her character in issue." *Strommen*, 648 N.W.2d at 687; *see also* Minn. R. Evid. 404(a). And "[the supreme court] ha[s] said emphatically that the fact that the accused takes the stand to testify does not put in issue his or her general character or propensities; that it opens up only the issue of credibility." *State v. Gress*, 250 Minn. 337, 344, 84 N.W.2d 616, 622 (1957).

The state argues that Needham opened the door to the issue of his history of drug use, claiming that the prosecutor's questions were in response to Needham's testimony that "[he had] never used drugs with [Mielke] ever." "'Opening the door' occurs when one party by introducing certain material creates in the opponent a right to respond with material that would otherwise have been inadmissible." *State v. Wenthe*, ___ N.W.2d ___, ___, 2015 WL 3875366, at *11 (Minn. June 24, 2015) (quotation omitted). Indeed, evidence of Needham's history of drug use, in conjunction with Mielke's testimony regarding his history of drug use and his and Needham's long relationship, all served to rebut a relevant fact that Needham himself placed at issue: whether he had ever, including in the hotel room on July 17, 2013, used methamphetamine with Mielke. Given the facts of this case, we cannot say that Needham did not open the door to the prosecutor's elicitation of testimony about his history of drug use. We therefore are unpersuaded that the district court plainly erred by allowing the prosecutor to question Needham about his history of drug use.

Even if the district court plainly erred by allowing evidence of Needham's history of drug use, the error "did not affect [his] substantial rights." *See State v. Matthews*, 779 N.W.2d 543, 551 (Minn. 2010). The testimony in question represents but a small piece of the state's strong case against Needham. The state introduced substantial evidence of Needham's culpable conduct, including his initial interaction with hotel staff, his and Mielke's dilatory and seemingly evasive conduct when the officers arrived, and the visible presence of hypodermic needles in the hotel room. The state also introduced Mielke's testimony that Needham "participate[d] in shooting up meth with [him]." Furthermore, the jury acquitted Needham of both principal-liability possession charges, strongly suggesting that the jury did not rely on Needham's history of drug use as evidence that he "act[ed] in conformity" with that history. *See* Minn. R. Evid. 404(a).

In sum, because the district court committed no reversible error by denying Needham's suppression motion or admitting *Spreigl* and character evidence, we affirm.

**Affirmed.**