STATE v. EUGENE COLE.[1]

July 24, 1953.

No. 35,999.

Z. L. Begin, for appellant.

J. A. A. Burnquist, Attorney General, Charles E. Houston, Assistant Attorney General, and C. J. Donnelly, County Attorney, for the State.

PER CURIAM.

Defendant was indicted and tried in Lyon county for the crime of rape. The jury returned a verdict of guilty. Defendant moved

[1]Reported in 59 N. W. (2d) 919.

the trial court to set aside the verdict and dismiss the action or, in the alternative, to grant a new trial. Both phases of the motion were denied, and defendant appeals from the order denying him a new trial.

The evidence showed that defendant and the complaining witness met in a tavern on the night of the alleged crime. It appears that they were not previously acquainted. In company with other young people, they went to an adjoining town to visit another tavern. It appears that defendant became intoxicated. Defendant and complaining witness returned to their home town with another girl. After letting this other girl out of the car, defendant drove into the rural area and parked on a side road. There is no serious dispute with respect to the facts up to this point.

The complaining witness testified that she asked defendant to take her home but that he refused. She further testified that, after stopping, defendant made certain indecent advances toward her and that she finally got out of the car and ran down the road. She said that defendant caught her and brought her back to the car, where he forcibly attacked her. The complaining witness further testified that, after the alleged attack, she agreed to go to a hotel with defendant in order to get back to town; that, after arriving at the hotel, she managed to evade defendant and went home; and that she arrived home about 4 a. m. and went to bed. She testified that she told her mother of the attack when she got up about 6:30 or 7:00 in the morning. The state introduced a statement by defendant wherein he admitted that he had had relations with the prosecuting witness without her consent.

Defendant, on the other hand, testified that, after he had let the other girl out of the car, he drove into the country with the consent of the complaining witness. He admitted taking certain liberties with the complaining witness but said that such conduct was with her consent. He further testified that she made certain advances toward him; that she left the car once for personal reasons; that, apparently because she "wasn't exactly sober," she had fallen; and that he had had to pick her up and help her back to the car.

He testified that she got into the back seat of the car by herself, however. Defendant admitted having intercourse with the complaining witness but said that it was with her consent and assistance. After the act, he testified, she consented to return to the hotel but, while he was registering, she disappeared. Defendant admitted giving a statement to the sheriff and county attorney but testified that certain parts of the statement were not true. He indicated that his mind was not clear when he made the statement and that he was told by the sheriff "to go along with the County Attorney as much as possible and don't get him mad because he is your prosecutor."

Thus, we have a situation in which the defendant, charged with the heinous crime of rape, admits having intercourse with the complaining witness but contends that such relations were with her full consent and assistance. Had the trial proceeded without error and the jury returned a verdict of guilty, their conclusion would certainly be supported by the evidence. It is our opinion, however, that defendant did not obtain a fair and impartial trial by reason of certain remarks in the closing argument of the county attorney. It is difficult to convey the actual tenor and quality of the closing argument without reviewing the entire evidence and setting out the argument in its entirety. However, the following excerpts may serve to indicate the nature of this argument:

"* * * So in a case of this kind it becomes the duty and obligation of the attorney that represents the State to argue this matter to you first merely in an effort to recall to your minds the facts and the evidence which we feel is important because having had the case in our hands for sometime we probably can recall the evidence a little better than the jurors who have heard it merely for a few days.

\* \* \* \* \*

"I am going to discuss the evidence with you a little bit, show you just how the State feels about the evidence as it is lined up here in this court room in this case. * * * You saw * * * [the complaining witness] on the witness stand. You heard her testify,

and I don't believe, ladies and gentlemen, if you will go back and remember her manner of testifying, both on direct examination and cross-examination, that you will ever find a girl that told you a more fair, straight forward and honest story than she did. I honestly believe that and there isn't one bit of evidence in this case that contradicts her in one respect except the defendant Cole himself. * * * I wasn't there and you weren't there. We have to take all of the facts and we have to take her story, and I say to you that * * * [the complaining witness] testified honestly, fairly— as honestly and fairly as any girl could testify in this case.

"* * * You know and I know what liquor does. She told you she drank. Sure she did. Other girls do too. But I say to you that no girl has to be crucified because she took a drink of liquor from this fellow.

\* \* \* \* \*

"I want you to go out there on that highway where this thing happened and I don't care how * * * [the complaining witness] got there, and I don't care if she had a couple of drinks with 7-Up. To me, ladies and gentlemen, in a case of this kind, that doesn't make one bit of difference. She is a young girl, poor girl, out in the evening, nothing to do, had to do something and went to Taunton. * * * I say to you there isn't one bit of evidence in this case to contradict that girl's story unless you want to believe the story the defendant has told you.

"* * * He says there was no trouble; that she voluntarily did all this herself, even to the point of exciting his passion, but I don't believe * * * [the complaining witness] knows enough for that. I don't believe that Gene Cole needed any treatment of that kind and neither do you, ladies and gentlemen.

\* \* \* \* \*

"* * * I tell you, ladies and gentlemen of the jury, that Gene Cole didn't go back 25 or 30 feet behind that automobile to relieve himself. * * * It just doesn't ring true, ladies and gentlemen, and you have got to find the facts in this case. * * *

"* * * Whether that is blood on them or not I don't know as a fact. But you can see it. It looks like blood to me. * * * No, they are not going to push that story down a Lyon County jury, ladies and gentlemen; at least I don't think so. * * * I thought they were going to claim he was so drunk that he didn't know what he signed. * * * Don't worry he [defendant] knew what he signed, and he told us the truth of what happened out there. I know, and I feel under the evidence in this case, that he raped that girl out there. Whether he was drunk I don't know. * * *

"* * * There isn't one bit of evidence to substantiate his story except what that girl has told you. That's all. * * * You can't fool a mother, ladies and gentlemen, when the daughter has been up to something. * * * These girls, even if they want to, can't fool their mothers. A mother is that close to her children every day in the year. * * *

"* * * That was her [complaining witness] first experience with a thing of this kind, and I hope to God, ladies and gentlemen, it is the last one. * * *

* * * * *

"* * * well, now I ask you if that's the impression you got of little * * * [complaining witness], if that's the kind of girl you think she is? No, I don't think so, ladies and gentlemen. I don't think you are going to find from this evidence that that's the way this thing happened.

"* * * This case is important. I feel the importance of it. * * * I know where he [defendant] got those scratches and so do you. * * *

"* * * I just don't believe this was anything but rape.

"* * * I'm telling you that * * * [the complaining witness] didn't have much chance out there. * * *

"* * * It seems to me that's what any young girl would have done under the same circumstances. She had been raped. God only knows what could have happened out there on that highway. If they want us to put up with that in Lyon County I don't know.

"* * * I didn't bring that out for the sake of proving he is a criminal. I wanted him to tell me the truth but he didn't do so.

"* * * What kind of a man are we dealing with here, ladies and gentlemen? Let's not be fooled in this case. * * * You tie all of those things together and you come back into this courtroom and you can tell Eugene Cole, 'Okay, Mr. Cole; you did nothing wrong; you are not guilty of rape'. Upon the evidence you can say that if you find that evidence to be true in his favor. On the other hand, you can go into that jury room when this case is submitted to you and you can bring back a verdict that will tell Gene Cole, and anyone else that has similar ideas, that he can't get away with that and that he is guilty of this offense, rape, force and violence. The only thing—the most wonderful thing that a girl has is her virginity. * * *

"If we let these moral laws tumble, ladies and gentlemen, there isn't going to be very much left. * * *

"* * * I want you to be fair to everybody, honest and fair. But if you can find that this man is not guilty upon that evidence, taking his story, taking his statement, his scratches, the girl's bruises, the torn clothes, the pocketbooks spread out on the highway—well, it doesn't look like a voluntary situation to me. He said they were out there an hour and a half. A man that size can cause a little girl her size an awful lot of trouble in that length of time—an awful lot of trouble, and he did. What was the man thinking about? He went out there only with his lust to think about. He had no reason or any consideration for the results of an act of intercourse under those circumstances. It never entered his mind as to the effect it might have upon that young girl for the rest of her life; the effect it might have on her nervous system as a result of a brutal attack of that kind. He never gave any thought to the fact of the worry that girl would have as to whether or not, as a result of that intercourse, she might become the mother of a child, a child that could only be illegitimate under those circumstances."

The cumulative effect of these remarks was to deprive defendant of a fair and impartial trial. There are other remarks by which

the prosecution indicated his intention to be fair to the defendant, but the substance of his argument was grossly improper and prejudicial. Again we have the situation where the prosecuting attorney, after asserting his role as an agent of the state, has sought to introduce his own opinion as evidence in the case. As we have pointed out in several previous opinions, it is improper for a prosecuting attorney in his closing argument, after emphasing his role as representative of the state, to offer his own opinion as evidence tending to prove defendant's guilt. See extensive authorities cited in State v. Gulbrandsen, 238 Minn. 508, 57 N. W. (2d) 419; see, also, Berger v. United States, 295 U. S. 78, 55 S. Ct. 629, 79 L. ed. 1314.[2]

But the most damning quality of this argument is the attempt to give the impression that defendant was to be found guilty if he had done *something* wrong. Here, defendant has admitted facts that would amount to the crime of fornication. M. S. A. 617.16. But the only crime with which he was charged was rape. Certain of the above-quoted remarks of the prosecutor in the closing argument were calculated appeals to the passion and prejudice of the jury. There were also certain questions that were obviously designed to cloud the real issue and appeal for conviction on the basis of defendant's general immoral conduct. For example:

"Q. You were single when this happened?

\*   \*   \*   \*   \*

"Q. But you were engaged to this girl you married?

\*   \*   \*   \*   \*

[2]See, also, Canons of Professional Ethics:

Canon 5: "The primary duty of a lawyer engaged in public prosecution is not to convict, but to see that justice is done."

Canon 15: "It is improper for a lawyer to assert in argument his personal belief in his client's innocence or in the justice of his cause."

See, also, Code of Ethics and Principles for the Prosecution and Defense of Criminal Cases:

No. 15: "It is improper for an attorney to assert in argument his personal belief in his client's innocence or for a prosecutor to assert in argument his personal belief in defendant's guilt."

"Q. While engaged to that girl, whom you say is now your wife, you admit having intercourse with * * * [the complaining witness] on the 18th of January, 1952?"

The only factual issue that was presented to the jury was whether or not the act was committed without the consent of the girl. The argument of the prosecutor indicated that a verdict of not guilty was to be returned only if defendant did "nothing wrong." There also seemed to be an emotional appeal to vindicate the community and use this defendant as an example. Defendant admitted many moral and legal wrongs, but the only offense with which he was charged was rape—not fornication, paternity, or general immoral activities.

We are reluctant to put the complaining witness through a second trial. Furthermore, it is certainly not our intention to unduly hamper or restrict prosecuting attorneys in legitimate closing arguments. Their role and duties have been emphasized previously. See authorities cited in State v. Gulbrandsen, 238 Minn. 508, 57 N. W. (2d) 419. Each case must be judged individually, and no strict rules can be established. Words like "fair trial" and "justice" are admittedly relatively indefinite. However, it is our opinion that there is a fairly common understanding of a prosecutor's duty and obligation to the accused. This opinion is supported by the fact that, while some prosecutors seem to consistently breach this standard, the record of other counties handling many times the number of prosecutions is unblemished.

In the instant case, we feel this duty was breached and that defendant did not have a fair trial.

Reversed and new trial ordered.