# STATE v. RUDOLPH GABRIEL SAUCEDO.

200 N. W. 2d 37.

August 11, 1972—No. 43074.

*C. Paul Jones,* State Public Defender, and *Carl Newquist,* Assistant State Public Defender, for appellant.

*Warren Spannaus,* Attorney General, *William B. Randall,* County Attorney, and *Steven C. DeCoster,* Assistant County Attorney, for respondent.

Heard before Knutson, C. J., and Kelly, Todd, and MacLaughlin, JJ.

MacLaughlin, Justice.

This is an appeal from a conviction of unauthorized use of a motor vehicle contrary to Minn. St. 609.55. We reverse.

Two St. Paul police officers, having been informed that a service station had been robbed about an hour before by two suspects of Mexican descent, followed a 1961 blue Chevrolet onto the I-94 freeway at Dale Street in St. Paul. The officers pulled nearly abreast of the car in order to view its occupants, who

were observed to be of Mexican descent. Both officers later made positive courtroom identifications of defendant as the driver. The police followed the car off the freeway, and when they turned on their unmarked squad car's flashing red light in an effort to stop the car, it rapidly accelerated and led the police on a high-speed chase which ended as the fleeing car came to a stop with the passenger and the driver embarking on the run. The passenger was never found, but the driver was apprehended more than a block from the car and promptly arrested. Following the chase it was discovered by the police officers that the Chevrolet had been stolen.

At trial one of the police officers testified, over vigorous objection, as follows:

"Q.   And, you—Well, what was your specific reason then for stopping this vehicle?

\*     \*     \*     \*     \*

"THE WITNESS:   We wanted to talk to the people in it because of the broadcast that had been put out for two people who matched the description that were involved in a robbery of a Clark Station.

"Q.   (By Mr. Gorecki)   When?

"A.   Approximately an hour earlier, an hour before we spotted the car.

"Q.   And, that was your reason?

"A.   Yes, sir."

There was other testimony from one of the officers, again over objection, that on the ride to the police station after the arrest, he "noticed him [defendant] digging in the vicinity of his right pocket \* \* \*. And, I heard what sounded like change rattling." There was further testimony that loose change was found beneath the back seat of the squad car after it arrived at the police station.

Defendant contends that the admission of such testimony relating to the crime of robbery constituted prejudicial error and

denied him a fair trial. Since we agree and therefore reverse, it is unnecessary to consider defendant's claim of error in the trial court's instructions or his contention that the evidence was insufficient to sustain the verdict.

The jury in this matter was to consider whether defendant had been guilty of the unauthorized use of a motor vehicle, not whether he had committed robbery. Whether he did or did not participate in a service station holdup is not relevant to the charge on which he was tried. However, it is possible, perhaps probable, that the evidence admitted, even tenuously associating defendant with that robbery, affected the deliberations of the jury. The danger, of course, is that the jury would be led to believe that defendant is prone to unlawful behavior and would be more likely to convict on the basis of defendant's character rather than because he has been proved guilty of the crime charged.

Among the imponderables which constitute the process of a jury's determination of any defendant's guilt or innocence, the consideration of his possible participation in unlawful activity other than that of which he has been formally accused cannot but jeopardize the fairness and trustworthiness of its verdict and cannot but work to defendant's prejudice. In State v. Sweeney, 180 Minn. 450, 231 N. W. 225 (1930), we stated the general rule and elaborated, as exceptions to it, those instances where the probative value of the evidence of other crimes was sufficient to outweigh the danger of obtaining a conviction based on evidence of character rather than guilt.

"The general rule in a criminal case is that evidence which in any manner shows or tends to show that the accused has committed another crime independent of that for which he is on trial is inadmissible. The reason is obvious and the rule should be rigorously enforced. The rule, however, like most rules, has certain exceptions not to be stated categorically but among which evidence of other crimes is admissible to prove the accusation

when it tends to establish (1) motive, (2) intent, (3) absence of mistake or accident, (4) the identity of the accused, (5) sex crimes, (6) a common scheme or plan embracing the commission of similar crimes so related to each other that proof of one or more of such tends to establish the accusation." 180 Minn. 455, 231 N. W. 227.

State v. Sorg, 275 Minn. 1, 8, 144 N. W. 2d 783, 788 (1966), further develops the exceptions to the general rule.

"Evidence connecting the defendant to other crimes is as a rule not admissible, principally because it tends to justify to the jury a finding of guilt irrespective of present charges. State v. Gress, 250 Minn. 337, 84 N. W. (2d) 616 [1957]. It is generally understood, however, that there are some exceptions. State v. Wofford, 262 Minn. 112, 114 N. W. (2d) 267 [1962]. Evidence of a separate crime may be admitted if it is reasonably closely related in scheme, pattern, and time to the act charged and its admission is largely within the discretion of the trial court. State v. De-Pauw, 246 Minn. 91, 74 N. W. (2d) 297 [1955]."

State v. Wofford, cited in the Sorg opinion, develops the particular exception relied upon by the state in the present case, noting at 262 Minn. 118, 114 N. W. 2d 271, that—

"* * * where two or more offenses are linked together in point of time or circumstances so that one cannot be fully shown without proving the other, or where evidence of other crimes constitutes part of the res gestae, it is admissible."

See, also, State v. Klotter, 274 Minn. 58, 62, 142 N. W. 2d 568, 571 (1966), wherein we observed:

"* * * Evidence of a separate crime may be admitted if it has a reasonably close relation in scheme and pattern and in time to the act charged."

The state argues that the robbery and the unauthorized use of the automobile are offenses sufficiently linked in time and circumstances to fit within the Wofford and Klotter exceptions

to the general exclusionary rule applicable to evidence of other crimes. We cannot agree. The offenses are not related as part of a "common scheme," the exception noted in the Sweeney decision which is the antecedent of the exceptions referred to in Wofford and Klotter. In fact, the only suggested connection between the two crimes is the allegation that they both occurred within a short period of time, which alone is of no compelling significance. Moreover, defendant was never tried for robbery, and there existed at most a mere suspicion that he had participated in any robbery.

The trial court possesses discretion to determine whether evidence of other crimes is admissible under one of the recognized exceptions to the general rule. State v. O'Donnell, 280 Minn. 213, 158 N. W. 2d 699 (1968); State v. Klotter, *supra;* State v. Sorenson, 270 Minn. 186, 134 N. W. 2d 115 (1965); State v. DePauw, 246 Minn. 91, 74 N. W. 2d 297 (1955). However, where it is unclear whether or not the evidence is admissible as an exception to the general exclusionary rule, the accused is to be given the benefit of the doubt and the evidence rejected. State v. Fitchette, 88 Minn. 145, 92 N. W. 527 (1902); State v. Spreigl, 272 Minn. 488, 139 N. W. 2d 167 (1965).

We think that the evidence should not have been admitted in this case, and therefore we reverse and remand for a new trial.

Reversed and remanded.