STATE v. DENNIS WAYNE MATERNOWSKI.

209 N. W. 2d 686.

July 20, 1973—No. 43546.

*C. Paul Jones,* State Public Defender, and *Jerome D. Truhn,* Assistant State Public Defender, for appellant.

*Warren Spannaus,* Attorney General, *George M. Scott,* County Attorney, and *Theodore R. Rix, Michael McGlennen,* and *Vernon E. Bergstrom,* Assistant County Attorneys, for respondent.

Heard before Knutson, C. J., and Rogosheske, Peterson, and Kelly, JJ.

PER CURIAM.

Defendant, convicted of aggravated robbery, Minn. St. 609.05, 609.245, and sentenced to imprisonment according to law, appeals from the judgment of conviction and from the order denying his motion for a new trial. Defendant contends that the trial court erred in certain of its evidentiary rulings. We affirm.

At 8:45 p.m. on Friday evening, February 19, 1971, a gunman who was never identified entered Larson's Grocery Store, which is located in the basement of an apartment building at 201 West 15th Street in Minneapolis, and robbed the owner of approximately $75. The key witness at the trial of defendant, who was charged with participating in this offense, was a Mrs. Mary Goggleye. She testified that as she walked to the grocery store around 8:30 p.m. she noticed suspicious conduct on the part of two men outside of the store. She later positively identified the men as defendant and one Melvin Manypenny. Mrs. Goggleye testified that once in the store she noticed that a third man was acting suspiciously. Hurriedly, she completed her shopping and left, again noting

defendant as she walked to her nearby apartment. From a window on the first floor of her apartment building, she observed defendant approach a parked car which she had noticed earlier and speak to an unidentified party, possibly Melvin Manypenny. Eventually she observed defendant get into the car and then, moments after that, she saw the man whom she had seen in the grocery store running toward the car from the direction of the store. The car then departed the scene.

Additionally, the state relied on the identity and common scheme or plan exceptions to the general rule excluding evidence of other crimes and introduced testimony of two witnesses that on the night following the incident in question defendant had been the gunman in the robbery of another small grocery store in the same general neighborhood.

1. Defendant contends, among other things, that the trial court erred in admitting the identification testimony of Mrs. Goggleye because she did not have an adequate opportunity to carefully observe the man whom she later identified as defendant, because her description of that man did not fit defendant, and because the lineup at which she (as well as the two witnesses to the other crime) identified defendant was impermissibly suggestive. We reject these contentions. Mrs. Goggleye clearly had more than a sufficient opportunity to observe not only the man in the store but also the two men on the street, including the man whom she later identified as defendant. As she put it, she got "a real good look" at defendant. Contrary to defendant's argument, the description Mrs. Goggleye gave police of the man she later identified as defendant fit defendant closely. Examination of a photograph of the lineup reveals that there is no basis to defendant's argument that the lineup was impermissibly suggestive in that there were not enough "lookalikes." For a detailed discussion of United States Supreme Court decisions relating to the last issue, see State v. King, 296 Minn. 306, 208 N. W. 2d 287. (1973).

2. We also believe that the trial court acted properly in admitting the evidence that on the night following the incident in question defendant had been the gunman in a similar robbery in the same vicinity. The state gave the necessary Spreigl notice and specified the exceptions to the general exclusionary rule under which the evidence was admissible; there was a close relationship in terms of time, location, and method of operation between the crime charged and the other crime; the court allowed the evidence because the state legitimately felt that it needed the evidence to meet its burden of proof; the state proved defendant's participation in the other crime by clear and convincing evidence; and the trial court carefully cautioned the jury about the use of the evidence. Accordingly, under principles enunciated in State v. Bill-

strom, 276 Minn. 174, 149 N. W. 2d 281 (1967), the trial court did not err in admitting the evidence.

3. Defendant strongly protests the introduction of evidence which he argues connected him with a third robbery not referred to in the Spreigl notice.

The facts relating to this issue are as follows: Veryl Burchett, a detective in the Minneapolis robbery division who testified for the state, had investigated robberies of Larson's Grocery Store (the crime charged), Abbott Grocery Store (referred to in the Spreigl notice), and the Parkway Hotel (not referred to in the Spreigl notice). In two of these cases, the Larson Grocery Store case and the Parkway Hotel case, witnesses had reported seeing an automobile. On direct examination Detective Burchett mentioned Mrs. Goggleye's description of the automobile she had seen and her identification of a picture of a 1959 Oldsmobile, which was the year and model of automobile in which defendant and Manypenny were arrested, as being the type of car she saw at the robbery scene; Burchett did not mention the Parkway Hotel robbery or the fact that witnesses to that robbery had seen an automobile. Then on cross-examination, defense counsel questioned Burchett as follows:

"Q. And when that car was identified to you, no eyewitness was able to give a license number, is that correct, referring to eyewitnesses on the car?

"A. Which particular case? Do you mean the Larson or—

"Q. Both of the two cases?

"A. No, we had no license number."

Then on redirect the state asked the following questions without objection:

"Q. Detective, was there a car seen at all at the Abbott Grocery robbery?

"A. No.

"Q. You referred to both of these two cases, or counsel did to you. Was there another robbery you were investigating?

"A. There was another one I was investigating.

"Q. A third robbery?

"A. Yes.

"Q. And was a car used in that one?

"A. Yes.

"Q. And did the description fit the description given by Mrs. Mary Goggleye?

"A. Yes."

Rather than objecting, defense counsel chose to proceed with recross-examination, mentioning the Parkway Hotel for the first time and seeking to show the differences in the description of the automobile used in that robbery from the automobile involved in the instant case. It was not until after this, on further redirect, that the prosecution elicited from Burchett testimony that Melvin Manypenny had been identified as the robber in the Parkway Hotel robbery and that another unidentified person had driven the getaway vehicle. Again, defense counsel made no objection.

Defendant in his brief concedes that "the questions eliciting evidence concerning the Parkway Hotel robbery were general and not designed to implicate" him, but contends that nonetheless the evidence prejudiced him. We do not reach this contention because we believe that defendant waived the right to raise it by failing to object to any of the state's questions and also by pursuing the topic as he did on cross-examination.

4. After the close of the state's case, defendant asked the court for permission to introduce evidence of Melvin Manypenny's acquittal of the Parkway Hotel robbery and evidence of dismissal, apparently without prejudice, of the Larson's Grocery Store robbery charge against Manypenny. The trial court denied defendant's request, stating that the request pertained to matters wholly collateral to the issues in the trial. Now, on appeal, defendant challenges the correctness of this denial, arguing that it interfered with his Sixth Amendment right to confront witnesses. Neither of the cases cited by defendant supports this argument. Any conceivable Sixth Amendment right-of-confrontation issue was waived by defendant's failure to attempt to call Manypenny.

Affirmed.

MR. JUSTICE YETKA and MR. JUSTICE SCOTT, not having been members of this court at the time of the argument and submission, took no part in the consideration or decision of this case.