**STATE of Minnesota, Respondent,**

**v.**

**Limous TITWORTH, Appellant.**

**No. 45666.**

Supreme Court of Minnesota.

May 27, 1977.

C. Paul Jones, Public Defender, Gregory A. Gaut, Asst. Public Defender, Minneapolis, for appellant.

Warren Spannaus, Atty. Gen., St. Paul, Gary W. Flakne, County Atty., Vernon E. Bergstrom, David W. Larson and Phebe S. Haugen, Asst. County Attys., Lee Barry, Law Clerk, Minneapolis, for respondent.

Heard before KELLY, TODD and WINTON, JJ., and considered and decided by the court en banc.

KELLY, Justice.

Defendant appeals from a judgment of conviction for aggravated robbery. We affirm.

Defendant was found guilty by a jury of the robbery of Steven Medley, the attendant of a gas station at 2300 Hennepin Avenue in Minneapolis at approximately 2 a. m. on June 14, 1974. Earlier that evening, defendant, who is black, and two white companions made three visits to the gas station in a 1967, powder-blue, 4-door Ford sedan with baby-moon hubcaps. The first visit occurred at about 10:30 p. m. and involved the purchase of one dollar's worth of gasoline. During this transaction, defendant briefly "hassled" Medley. At approximately midnight the car returned and remained for 10 to 15 minutes, while its three occupants conversed with some motorcyclists. At about 1:30 a. m. the same three men returned in the Ford and ordered gas. The black man leaned out of the left rear car door and vomited on the station parking lot. Medley informed the men that the hose from the pump would not reach their gas tank and told them to move their car to another pump, whereupon the car left the station. A few minutes later, one of the car's white occupants emerged from behind the station and accosted Medley with a small white-handled revolver, robbing him of the currency he was carrying. The robber then ran behind the building and got in the Ford, which appeared to Medley to contain three other persons. Medley immediately called the police and approximately two minutes later a powder-blue Ford was stopped by police officers 7 to 9 blocks from the gas station. It was occupied by four men, defendant and three whites, one of whom apparently had been picked up hitchhiking after the robbery. Defendant claimed that he also had been picked up hitchhiking after the robbery.

Medley later identified this car as being involved in the robbery. From the whine its starter emitted, he also recognized that it had made the earlier visits to the gas station. From a police photograph, he identified a revolver which had been found near the car after it was stopped as being similar to the revolver used in the robbery. From lineups, Medley positively identified one of the white occupants of the car as the gunman in the robbery. He also picked another white man and defendant as the two men who had been with the gunman earlier in the evening, but he stated he was "not too sure" about these choices.

The issue in this appeal concerns the admissibility of evidence of four other incidents that occurred on the night in question. At 11:05 p. m., John French and Ted

Lockwood were conversing near Loring Park in Minneapolis. Two white men emerged from a light-blue Ford, one brandishing a small revolver with white grips, and demanded their wallets. They complied with the request and were ordered to leave. French delayed and asked for the return of his wallet, prompting the remaining occupant of the car, a black man, to emerge and strike him. French then left and his assailants drove away. At a lineup of black men conducted a few days later, neither French nor Lockwood could identify defendant as the man they saw that night. Lockwood stated that their attackers' car seemed to be the same as the one in the police photograph of the impounded Ford; French could not identify the car. Both thought that the revolver found with the Ford could have been the gun used on them. French's wallet was recovered from the Ford in which defendant was riding when the police stopped it.

The second incident occurred at 11:15 p. m. Casper Maus heard a noise outside his apartment at 1800 LaSalle Avenue in Minneapolis. He went to the window and saw a man, later identified as John Brickley, being beaten with a pistol by a black man while two white men watched. The black man removed Brickley's sandals, and the three men ran to a 1966 or 1967, light-colored, 4-door Ford with baby-moon hubcaps and a high-pitched starter. Maus viewed lineups containing defendant and the gunman Medley identified, but could not identify anyone. He did identify the impounded car as being identical to the vehicle he saw and further stated that the revolver found near the car and the sandal found in the car appeared to be similar to those he saw that night. Brickley had no memory of the night's events but identified the sandal found in the Ford as one he had lost that night.

At 11:30 p. m., Thomas Coyle was walking in the area of West 27th Street and Humboldt Avenue in Minneapolis, carrying a 6-pack of Olympia beer wrapped in newspaper and tied with string. Coyle testified that a black man and a white man got out of a double-parked, light-colored, 1965 Ford and confronted him, while another white man remained near the forward door on the driver's side. The black man brandished a small revolver with white grips and ordered Coyle to stop and deliver his money or be shot. Coyle gave him his wallet, which contained $4 and gave him the beer he had been carrying as well. The black man then told Coyle to run. When Coyle's attempt to run was hampered by his bad knee, the black man again threatened to shoot him and then hit him several times with the revolver. At a lineup, Coyle picked out the same white man Medley had identified as the gunman. From a lineup of black men, Coyle picked three men, but not defendant, as individuals for whom he had some feelings of recognition. Nine days later at the preliminary hearing for the white man he had identified, Coyle saw defendant with the white man and determined that defendant was the man who robbed him. Coyle originally told the police that he thought the black man had been clean shaven, but two days later at the lineup defendant was not clean shaven. Coyle identified the car and revolver found by the police as being similar to those he saw that night. He also identified the three Olympia beer cans and some newspaper and string found in the Ford, as being similar to the items taken from him in the robbery.

The fourth incident involved the robbery of a 7-Eleven store at West 35th Street and Nicollet Avenue in Minneapolis at approximately 12:10 a. m. A black man wearing a floppy hat entered the store and brought two 6-packs of beer to the cash register. He then drew a small, white-handled revolver and ordered Javed Ayub, the clerk, to empty the till, put the money in a sack with the beer, and then lie on the floor. Ayub complied. A customer who had been in the 7-Eleven store parking lot testified that he saw one man get into a 1967 or 1968 blue Ford, which was then driven in the wrong direction on one-way 35th Street. A passing taxi driver testified he saw two men get into a light-colored, older-model

Chevy. He wrote down the license number, which matched that of the impounded Ford. The customer noted that the impounded car in the police photograph was very possibly the car he saw. Ayub picked defendant from a lineup and later identified him in court as looking "pretty close" to the man who robbed him. He also identified the revolver as being very similar to the one used to rob him. Later the morning of the robbery, Ayub ventured out of the 7-Eleven store to sweep the parking lot and found the floppy hat worn by the robber. He brought the hat to police headquarters, where a lieutenant noticed that it was similar to a hat he had seen defendant wear the two days immediately before the events in question.

The prosecution desired to introduce evidence of these four incidents to help establish defendant's identity and intent with respect to the gas station robbery. The court granted the prosecution's request over defendant's objection, and it is that ruling which forms the basis of defendant's appeal. Two issues are presented:

1. Was the evidence of defendant's participation in the other four crimes clear and convincing?

2. Did the trial court abuse its discretion in determining that the probative value of the other four crimes outweighed their prejudicial effect to defendant?

Evidence that an accused has committed other crimes independent of that for which he is on trial is inadmissible to prove guilt of the offense charged, unless an exception to this general rule is applicable. E. g., *State v. Dinneen,* 300 Minn. 354, 220 N.W.2d 292 (1974); *State v. Sweeney,* 180 Minn. 450, 455, 231 N.W. 225, 227 (1930). Two well-settled exceptions to this rule are the use of evidence of other crimes to prove the identity of the defendant, e. g., *State v. Williams,* Minn., 239 N.W.2d 222 (1976), and to prove the intent of the defendant, e. g., *State v. Hines,* 270 Minn. 30, 133 N.W.2d 371 (1964), with respect to the alleged offense. *State v. Billstrom,* 276 Minn. 174, 149 N.W.2d 281 (1967), is the leading Minnesota case in this area and it established standards that must be met before evidence covered by an exception may be admitted.[1]

Defendant contends that one of the standards has not been satisfied because proof of defendant's participation in each of the four other incidents that night was less than clear and convincing. Defendant moved to strike the testimony at trial. He notes that with respect to the first two incidents, no identification was made of defendant and as to the third the identification was questionable. Only in the last incident was the victim able to testify that defendant looked like the man who robbed him.

This court has discussed the *Billstrom* "clear and convincing" standard in three

1. The court in *State v. Billstrom,* 276 Minn. 174, 178, 149 N.W.2d 281, 284 (1967), required:

"(a) Evidence of other crimes may not be received unless there has been notice as required by *State v. Spreigl,* 272 Minn. 488, 496, 139 N.W.2d 167, 173. (Applicable to all cases tried after December 17, 1965.)

"(b) At the time the evidence is offered, the prosecutor shall specify the exception to the general exclusionary rule under which it is admissible.

"(c) If evidence of other crimes is received for purposes of identity rather than to show a common scheme or plan, there must nevertheless be some relationship in time, location, or modus operandi between the crime charged and the other offenses.

"(d) Evidence of other crimes is admissible only if the trial court finds the direct or circumstantial evidence of defendant's identity is oth-

erwise weak or inadequate, and that it is necessary to support the state's burden of proof. It should be excluded where it is merely cumulative and a subterfuge for impugning defendant's character or for indicating to the jury that he is a proper candidate for punishment.

"(e) *The evidence of defendant's participation in other crimes need not be proved beyond a reasonable doubt but must be clear and convincing.*

"(f) Both at the time the evidence is received and in the final charge, the court should admonish the jury that the testimony is received for the limited purpose of establishing identity. It is the court's duty to advise the jury in unequivocal language that defendant is not being tried and may not be convicted for any offense except that charged, warning them that to convict for other offenses may result in unjust double punishment." (Italics supplied.)

cases.[2] In *State v. Dinneen*, 300 Minn. 354, 220 N.W.2d 292 (1974), the defendant was charged with theft of a car. A prosecution witness testified that a similar car was seen leaving the scene of an armed robbery 9 days after the reported theft. No evidence identified the defendant as a participant in the robbery or an occupant in the car. The only connection the testimony had with the prosecution for theft was that it helped lead to recovery of the stolen vehicle. Since the evidence was superfluous to prove that the defendant did not intend to return the vehicle, its admission into evidence was error. Accord, *State v. Saucedo*, 294 Minn. 289, 200 N.W.2d 37 (1972). There the court said that where the defendant had not been prosecuted for an earlier robbery because it was at most mere suspicion that he had participated in the robbery, evidence of that robbery was inadmissible in a prosecution of defendant for unauthorized use of a motor vehicle. The other case is *State v. Hogan*, 297 Minn. 430, 212 N.W.2d 664 (1973). There the court found that circumstantial evidence alone was clear and convincing proof. The defendant was charged with planting a bomb which exploded in a department store. The prosecution endeavored to show the defendant's intent by introducing evidence of an unexploded bomb found in a nearby locker which was set to explode after the first bomb. Although there was no direct evidence that the defendant planted the second bomb, its similarity to the first bomb as well as its proximity in time and location, the fact that manuals on the making and most effective use of bombs were found at defendant's residence, and the fact that defendant was injured by an explosion of a third bomb provided sufficient evidence of intent to sustain admission of evidence relating to the second bomb.

■ In the instant case, defendant was identified as the robber of the 7-Eleven store. That identification, together with the identification of the car by the customer and the taxi driver, permitted the trial court to conclude that defendant's participation in that robbery was established by clear and convincing evidence. See, *State v. Billstrom*, 276 Minn. 174, 149 N.W.2d 281 (1967). Defendant's participation in the other robberies was not established by compelling direct evidence. As in *Hogan*, however, there was sufficient circumstantial evidence to constitute clear and convincing proof of defendant's participation. The other robberies were perpetrated by a black man and two white men within an hour's time within a small area. The evidence—the wallet, sandal, revolver, beer cans, newspaper, and string—found in the Ford in which defendant was apprehended and eyewitness testimony point to that vehicle as being the one involved in the robberies. Most importantly, Medley, the gas station

---

2. In three other cases, the court stated that the *Billstrom* standards had been met, without discussing the issue of clear and convincing evidence. *State v. Bowser*, 305 Minn. 431, 234 N.W.2d 890 (1975); *State v. Meadows*, 303 Minn. 76, 226 N.W.2d 303 (1975); *State v. Maternowski*, 297 Minn. 482, 209 N.W.2d 686 (1973).

In *Billstrom* itself, eyewitness identification by robbery victims was sufficient to establish the defendant as a participant in other robberies. Four pre-*Billstrom* cases also involved this issue. In *State v. Sorg*, 275 Minn. 1, 144 N.W.2d 783 (1966), the court felt that there was not a very strong or convincing link between defendant and another robbery but nevertheless found that under the circumstances the trial court did not err in admitting the evidence. In *State v. Sutton*, 272 Minn. 399, 138 N.W.2d 46 (1965), the defendant was charged with forging a narcotics prescription.

Several pharmacists from other drug stores either identified defendant positively or testified that defendant very much resembled a man who had forged similar prescriptions at their stores. The court found this testimony to have been properly admitted. In *State v. Sorenson*, 270 Minn. 186, 134 N.W.2d 115 (1965), the court found that testimony was properly admitted in a prosecution for burglary, where the witnesses testified that the defendant greatly resembled the burglar who had been at their apartment about 2 months prior to the burglary charged. In *State v. Bock*, 229 Minn. 449, 39 N.W.2d 887 (1949), three recipients of forged checks identified defendant as the man who passed them. This evidence was admissible in a prosecution for forgery based on the passing of a different check. See, also, *State v. Johnson*, 173 Minn. 543, 546, 217 N.W. 683, 684 (1928).

attendant, linked defendant to the car at various times during the evening, both before and between the incidents in question. Unquestionably, there was a relationship in time, location, and modus operandi between the crime here charged and the other offenses.[3]

Having determined that the *Billstrom* standards were met, the trial court in its discretion must still balance the probative value of the other crimes against the prejudicial effect to defendant in admitting such evidence. *State v. Gavle*, 234 Minn. 186, 208, 48 N.W.2d 44, 56 (1951); McCormick, Evidence (2 ed.) § 190. Satisfaction of the *Billstrom* standards is itself some indication of the probative value of evidence of other crimes, but that value may be outweighed by the prejudicial effect of the evidence. Where it is unclear whether or not the evidence is admissible, the defendant must be given the benefit of the doubt. *State v. Saucedo*, 294 Minn. 289, 293, 200 N.W.2d 37, 40 (1972).

Here the problem lies in the admission of evidence of four other robberies. The probative value of each additional incident has a cumulative effect, while its prejudicial effect is increased as more time and attention are diverted from the facts of the crime charged. We think that the trial court did not abuse its discretion in finding that the probative value of the evidence outweighed its prejudicial effect. The other robberies were sufficiently close in time, location, and nature to be highly probative of defendant's opportunity, identity, intent and common scheme and plan with respect to the robbery for which he was charged.[4] His conviction therefore must be affirmed.

Affirmed.

3. In *United States v. Howard*, 504 F.2d 1281, 1284 (8 Cir. 1974), a Federal court expressed an exception to the general exclusionary rule in these words:

"* * * Another such exception permits the introduction of evidence of other criminal activity to complete the story of the crime on trial by proving its immediate context or 'res gestae.'" See, also, *United States v. Cochran*, 475 F.2d 1080, 1082 (8 Cir.), certiorari denied, 414 U.S. 833, 94 S.Ct. 173, 38 L.Ed.2d 68 (1973); *United States v. Stubblefield*, 408 F.2d 309, 310 (6 Cir. 1969); McCormick, Evidence (2 ed.) § 190, p. 448; 1 Wigmore, Evidence (3 ed.) § 218.

Although Wigmore criticized the res gestae rule, his complaint was that the use of the term obscured analysis, not that the rule itself was unsound. Perhaps because of this scholarly criticism, Rule 404(b), Federal Rules of Evidence does not use the term "res gestae."

Rule 404(b), Federal Rules of Evidence provides:

"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

4. The evidence of the other crimes was offered for purposes of identity rather than to show a common scheme and plan. However, under *Billstrom* such evidence received for purposes of identity must be accompanied by a showing *of some relationship in time, location, or modus* operandi between the crime charged and the other offenses. See, footnote 1, *supra*. Here all these elements were shown and tended to prove a common scheme and plan.