STATE of Minnesota, Respondent,

v.

Wayne Curtis SNYDER, Appellant.

No. C1–85–348.

Court of Appeals of Minnesota.

Oct. 15, 1985.
Review Denied Dec. 13, 1985.

Hubert H. Humphrey, III, State Atty. Gen., Michael Saeger, Sp. Asst. Atty. Gen., St. Paul, Thomas H. Sellnow, Asst. Co. Atty., Long Prairie, for respondent.

Michael O. Burns, Paul Widick, St. Cloud, for appellant.

Heard, considered, and decided by WOZ-NIAK, P.J., and PARKER and LESLIE, JJ.

## OPINION

LESLIE, Judge.

This is an appeal by a defendant from a conviction of assault in the second degree, Minn.Stat. § 609.222 (1984). Defendant

raises a number of issues involving prosecutorial misconduct, discovery, *Spreigl* evidence, validity of the search, and sufficiency of the evidence. We affirm.

### FACTS

Staples Police Officer Douglas Case and Todd County Deputy Sheriff Wesley Klema received a report on January 25, 1984, at approximately 8:30 p.m., that a vehicle had struck a light pole in Staples. When they arrived at the scene, they learned from citizen witnesses that the vehicle left the scene but that it was a gold-colored Ford with a license plate number matching that of a Snyder woman who lived in Motley. Deputy Klema recalled that he knew persons named Snyder who lived in the area, so he decided to drive to their residence to determine whether there was any connection.

When Deputy Klema arrived at the Snyder house, he saw a vehicle parked by the house that matched the description and license given by the witnesses. He also noticed damage to the car in the shape of the light pole. He first spoke with Gloria Snyder, appellant's wife, who told him that the Snyder vehicle had been involved in a collision with a light pole and that she would come into town the next day to take care of the damages. Deputy Klema informed her that he wanted to speak with the driver, and Mrs. Snyder went back into the house but failed to return. After approximately five minutes, Deputy Klema knocked on the door and obtained permission to enter.

After some conversations with people inside the home, Mrs. Snyder said that she had been driving the car at the time of the accident. Gary Strunk, appellant's brother-in-law, told Deputy Klema that it was Wayne Snyder, not Gloria Snyder, who had been driving the car. Deputy Klema then asked about the location of Wayne Snyder, to which Mrs. Snyder replied that she did not know. At that point, Deputy Klema read Mrs. Snyder the *Miranda* warning and continued to question her. He then went out to his car to run a check on her

driver's license and to call Officer Case to the scene.

Witness accounts of subsequent events differed. The following persons were present in the Snyder home at the time of arrest: Gloria Snyder; Melissa Snyder (age 16); Michelle Snyder (age 14); Gary Sprunk; and Diane Mitchell, Sprunk's girlfriend. Both police officers testified that they obtained consent to enter the house a second time. Other witnesses, however, testified that the officers entered without permission. It is uncontroverted that Gloria Snyder eventually gave the officers permission to search the house. Nevertheless, witnesses also testified that both before the request to search and in her response, Gloria Snyder asked the officers to leave her alone and to leave the house.

After searching various rooms, Deputy Klema reached appellant's bedroom, and he testified that he identified himself before entering the room. Officer Case also testified that he heard Deputy Klema knock and identify himself. No other witnesses heard this conversation, however, and they testified that Deputy Klema walked into the bedroom without saying or doing anything. As Klema entered the bedroom, he carried a shining flashlight.

Deputy Klema testified that he found appellant standing at the opposite side of the room, about ten feet away, with his hand behind his back. Appellant started coming forward and Deputy Klema observed a handgun that appellant pointed at Klema's chest. Deputy Klema hit the barrel of the gun away with his flashlight, subdued him, and placed him under arrest. The gun was found to have been loaded.

There was testimony that early that afternoon, appellant, Gloria Snyder, Gary Sprunk, and Diane Mitchell socialized together at appellant's home and then at Steve's Pub in Pillager until approximately 8:00 p.m. Appellant had about three beers at home before 3:00 and another four drinks at the tavern. The two couples then left the tavern and drove to appellant's mother's house to pick up a second car, the cream-colored Ford LTD. Appellant and

Sprunk were in that car when appellant swerved his car to avoid another and ran off the road and into a light pole, knocking it down. Appellant left the scene of the accident, and the parties agreed to tell the police, should they investigate, that Gloria Snyder was driving the car, because a traffic citation could endanger Wayne Snyder's truck driver's license.

## ISSUES

1. Did the prosecutor's conduct at trial deprive appellant of a fair trial?

2. Did the State fail to abide by the discovery rules, thereby prejudicing appellant?

3. Was evidence of other crimes improperly introduced at trial?

4. Was the search of appellant's home illegal?

5. Was there sufficient evidence to sustain the verdict of conviction?

## ANALYSIS

1. Appellant's first allegation of error is improper prosecutorial conduct in three specific instances: (1) statements made by the prosecuting attorney during final argument alleged to be the improper expression of a personal opinion; (2) Deputy Klema's sitting with the prosecutor during voir dire; and (3) alleged improper references to appellant's failure to take the witness stand.

The prosecutor made the following comments during final argument:

I don't believe you can find that the defendant was being assaulted. It is pretty obvious to me that what the defendant was doing was hiding in the bedroom. * * *

Ladies and gentlemen of the jury, I don't believe reasonable men and women can buy that excuse. I think the reason they left the scene is because there may have been a question in their mind as to whether or not they were under the influence. * * *

With all those factors in mind, it will be your decision to decide whether or not

the assault, if, in fact, there was an assault, and I believe there was * * *.

Ladies and gentlemen of the jury, again, I cannot stress too strongly my opinion as to what the facts dictate. The defendant was hiding in his bedroom— * * *

Now, there are a few items that, ladies and gentlemen of the jury, I find to be inherently incredible in the testimony that has been given the last two days.

The trial judge responded to defense counsel's objection during final argument with a mild cautionary instruction.

It has long been improper for a prosecutor to offer his or her own opinion during closing argument as evidence tending to prove the defendant's guilt. *See State v. Gulbrandsen*, 238 Minn. 508, 57 N.W.2d 419 (1953); *State v. Cole*, 240 Minn. 52, 59 N.W.2d 919 (1953). In *Gulbrandsen*, the Minnesota Supreme Court described the role of the prosecutor as follows:

In particular, [the prosecutor] must at all times bear in mind that defendant is innocent until proved guilty, and, while it is his duty to forcefully present all material facts from which the judge or jury may conclude that defendant is guilty, he must, nevertheless, refrain from pre-condemning the accused on the authority of the government he represents. He need not make his argument entirely colorless and may state conclusions and inferences which the human mind may reasonably draw from the facts in evidence, [citations omitted] but he is not to offer his own opinion or the opinion of "the state" as substantive evidence tending to prove defendant's guilt since such matter is not competent evidence.

238 Minn. at 511, 57 N.W.2d at 422.

The prosecutor's conduct in this case was clearly improper. Nevertheless, this court is to consider the closing argument in its entirety, and no single phrase is to be taken out of context as a basis for reversal. *Gulbrandsen*, 238 Minn. at 509, 57 N.W.2d at 421; *State v. Stephani*, 369 N.W.2d 540, 547 (Minn.Ct.App.1985). In addition, whether a new trial should be

granted because of the prosecutor's misconduct is left to the discretion of the trial judge who is in the best position to appraise its effect. *State v. Wahlberg*, 296 N.W.2d 408, 420 (Minn.1980). The trial court's decision should be reversed on appeal only if the misconduct, "viewed in the light of the whole record, appears to be inexcusable and so serious and prejudicial that defendant's right to a fair trial was denied." *Id.*

■ Consequently, although we expressly disapprove of the statements of opinion by the prosecutor at trial, we hold that the conduct did not constitute reversible error.

Appellant next challenges the conduct of the prosecutor in allowing Deputy Klema to sit with him during voir dire. The Minnesota Supreme Court has repeatedly expressed disapproval of such conduct. *See State v. Schwartz*, 266 Minn. 104, 111, 122 N.W.2d 769, 774 (1963); *State v. Biehoffer*, 269 Minn. 35, 49, 129 N.W.2d 918, 927 (1964); *State v. Schallock*, 281 N.W.2d 186 (Minn.1979).

■ In this case, Deputy Klema was the complaining witness, his testimony constituted the main portion of the State's case, and he was the only witness to the alleged assault. Consequently, it was clearly improper to allow him to sit with the prosecutor during voir dire. Nevertheless, the Minnesota Supreme Court has failed to reverse on this ground. Although we too frown upon such conduct, it did not constitute reversible error in this case.

Appellant also contends that the prosecutor's references to "uncontroverted" testimony constituted subtle references to defendant's failure to take the stand. The prosecutor made the following comments to the jury:

And we are submitting that the actual facts were that the defendant—I have to check this each time—pointed the gun at Officer Klema in some way, shape or form directly at his chest. That testimony is in. There is no testimony to contradict that direct testimony. * * *

With all those factors in mind, it will be your decision to decide whether or not the assault, if, in fact, there was an assault, and I believe there was—there is only—that testimony itself is uncontradicted. * * *

It is the responsibility of the jury to decide whether or not an assault occurred. In considering that you should consider the evidence of the officer and the lack of evidence of any other witness.

■ The Minnesota Supreme Court and this court have disapproved of subtle references to allegedly "uncontroverted" evidence, especially if the only person who could have refuted the testimony was the defendant, because such references may improperly suggest that the defendant is obligated to prove facts. *State v. Schneider*, 311 Minn. 566, 567, 249 N.W.2d 720, 722 (1977); *Stephani*, 369 N.W.2d at 547. Nevertheless, the supreme court has not found such comments to be prejudicial if they were not extensive and did not emphasize defendant's silence per se as a basis for conviction. *See Schneider*, 311 Minn. at 567, 249 N.W.2d at 722. In addition, only those errors that prejudice "substantial rights" justify granting a new trial. *State v. Mastrian*, 285 Minn. 51, 75, 171 N.W.2d 695, 710 (1969); *State v. Southard*, 360 N.W.2d 376, 383 (Minn.Ct.App.1985).

■ We hold that the prosecutor's comments regarding "uncontroverted" testimony were not so prejudicial as to constitute reversible error in this case.

■ We have considered appellant's claims with respect to trial defects separately. Nevertheless, the Minnesota Supreme Court has stated that "[a]n accumulation of encroachments upon the rights of the defendant, each insufficient of itself to taint the trial, can in combination destroy the atmosphere of fairness needed if respect for law is to be preserved." *Biehoffer*, 269 Minn. at 49–50, 129 N.W.2d at 927 (1964). Although the totality of encroachment comes dangerously close, we are satisfied that the prosecutor's conduct in this case did not influence the verdict of the jury.

2. Appellant's second argument is that the State failed to comply with mandatory discovery requirements and thereby prejudiced the appellant. Under the Minnesota Rules of Criminal Procedure, the prosecuting attorney must permit defense counsel "to inspect and reproduce such witnesses' relevant written or recorded statements * * *." Minn.R.Crim.P. 9.01, subd. 1(1)(a). During the testimony of Officer Case, he indicated that he filed a report the day following appellant's arrest. The prosecutor did not supply that report to the defense until the court ordered the prosecutor to do so during the trial. The court then allowed the officer to be recalled for further cross-examination.

Appellant relies on *State v. Hall*, 315 N.W.2d 223, 225 (Minn.1982), to support its contention. In *Hall*, the prosecutor conceded that his predecessor learned of the perjury at the time of the omnibus hearing and failed to disclose this information to the defense counsel in violation of the discovery rules. The court reversed and remanded for a new trial because the defendant may have been prejudiced by the breach of the discovery rules. *Id.*

In this case, there was no deliberate attempt to hide the report. The State contends that it did not have notice of the report until Officer Case took the stand. In addition, Officer Case's report basically duplicated Deputy Klema's report. Officer Case described the scuffle but failed to list assault as a charge. This discrepancy does not appear to be prejudicial. In *State v. Dahlstrom*, 276 Minn. 301, 305, 150 N.W.2d 53, 57 (1967), the court required a finding of "substantial prejudice." Furthermore, the administration of the discovery rules at trial "is entrusted to the 'good sense and experience of the trial judge * * *.'" *State v. King*, 296 Minn. 306, 314, 208 N.W.2d 287, 292–93 (1973) (quoting *Palermo v. United States*, 360 U.S. 343, 353, 79 S.Ct. 1217, 1225, 3 L.Ed.2d 1287 (1959)).

We therefore reject appellant's claim that he was prejudiced by the failure to obtain Officer Case's report before trial.

3. Appellant next challenges the evidence introduced at trial of other crimes committed in connection with this incident, such as careless driving and driving while under the influence of alcohol. He argues that the misdemeanor traffic offenses were inadmissible because they were different in type from assault and remote in time from the alleged assault. Appellant also contends that it was error to admit the evidence of other crimes because the State gave no notice under Rule 7.02 of the Minnesota Rules of Criminal Procedure.

We disagree. Although evidence of other crimes is not generally admissible to prove the character of defendant to show he or she acted in conformity therewith, such evidence may be admitted if it demonstrates motive. Minn.R.Evid. 404(b). The prosecutor must give formal notice if the other crime evidence is remote from the offense being litigated, but no such notice is required if the offenses constituted "a part of the occurrence or episode out of which the offense charged against the defendant arose." Minn.R. Crim.P. 7.02; *State v. Spreigl*, 272 Minn. 488, 139 N.W.2d 167 (1965). Furthermore, the ultimate decision as to whether to admit or reject evidence of other crimes rests largely within the discretion of the trial court. *State v. Campbell*, 367 N.W.2d 454, 460 (Minn.1985); *State v. Andersen*, 370 N.W.2d 653, 665 (Minn.Ct.App.1985).

Any prejudicial effect resulting from admission of the evidence of drinking and careless driving did not outweigh its probative value in light of the State's substantial burden of proving appellant's motive for the assault. *See id.; State v. Titworth*, 255 N.W.2d 241, 246 (Minn.1977). Also, this case falls within the exception to Rule 7.02 because the drinking, hitting the pole, leaving the scene, hiding from the police, and drawing the gun on Deputy Klema constituted one continuous series of events. The trial court did not abuse its discretion in admitting the evidence of drinking and careless driving.

4. Appellant challenges the legality of the search of his house that led to his arrest on grounds that the consent obtained from appellant's wife was coerced. Although a search warrant is generally required by the fourth amendment to enter a home to make an arrest, there is an exception if the police officers obtained consent to enter. *United States v. Briley,* 726 F.2d 1301, 1303–1304 (8th Cir.1984). It is uncontroverted that the officers obtained the consent of Gloria Snyder to enter the home and search for her husband. Also, appellant concedes that she had the right to give such consent because she had common authority over the premises. *United States v. Matlock,* 415 U.S. 164, 171, 94 S.Ct. 988, 993, 39 L.Ed.2d 242 (1974).

The parties disagree, however, as to whether the consent was in fact voluntarily given and not the result of duress or coercion, express or implied. Voluntariness is a question of fact that is to be determined from an examination of all the circumstances. *Schneckloth v. Bustamonte,* 412 U.S. 218, 226, 93 S.Ct. 2041, 2047, 36 L.Ed.2d 854 (1973). If the consent is found to be involuntary, the consent is invalid. *See Bumper v. North Carolina,* 391 U.S. 543, 550, 88 S.Ct. 1788, 1792, 20 L.Ed.2d 382 (1968).

All of the witnesses testified that Mrs. Snyder told Officer Klema that she would "be down in the morning to take care of this [damage]." There was considerable disagreement, however, as to other exchanges. Some witnesses testified that Mrs. Snyder told the officers several times to leave her home or leave her alone. Officer Klema denied that such comments were made. Although all witnesses agreed that she eventually consented to the search, some witnesses testified that her consent was coupled with language that the police should leave her alone. Officer Klema read Mrs. Snyder her *Miranda* rights approximately twenty minutes prior to obtaining her consent to search.

We hold that the consent was voluntarily given. Deputy Klema received permission to enter the Snyder home. He did not misrepresent his purpose in asking to come in. There is no evidence of any coercion of Gloria Snyder by threatening to obtain a warrant. Furthermore, she expressly consented to the search of the home to find Wayne Snyder. The consent was voluntary and the search therefore was legal. *See State v. Powell,* 357 N.W.2d 146 (Minn. Ct.App.1984), *pet. for rev. denied,* (Minn. Jan. 15, 1985).

5. Appellant's final claim is that there was insufficient evidence to sustain a conviction. We disagree. Jury verdicts are presumed to be correct unless there is no reasonable evidence to sustain the result. *State v. Norgaard,* 272 Minn. 48, 136 N.W.2d 628, 631–32 (1965); *State v. Daniels,* 361 N.W.2d 819, 826 (Minn.Ct. App.1985). After reviewing the record, we are satisfied that there was sufficient evidence to sustain the jury's verdict of guilt.

## DECISION

1. The instances of prosecutorial misconduct did not constitute reversible error.

2. Failure to comply with mandatory discovery requirements did not constitute reversible error because appellant was not prejudiced.

3. Evidence of other crimes was admissible without notice because the offenses constituted a part of the occurrence or episode out of which the offense charged against the defendant arose.

4. Because appellant's wife voluntarily consented, the search of appellant's home was legal.

5. There was sufficient evidence to sustain the jury verdict of guilty.

Affirmed.