STATE of Minnesota, Respondent,

v.

Rhonda Schiline BUTENHOFF,
Appellant.

No. C1–91–1606.

Court of Appeals of Minnesota.

April 21, 1992.

Review Denied May 15, 1992.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Alan L. Mitchell, St. Louis County Atty., Mark S. Rubin, Asst. County Atty., Duluth, for respondent.

John M. Stuart, State Public Defender, Susan K. Maki, Asst. State Public Defender, Minneapolis, for appellant.

Considered and decided by HARTEN, P.J., and PARKER and CRIPPEN, JJ.

## OPINION

HARTEN, Judge.

A jury found appellant Rhonda S. Butenhoff guilty of felony assault in the second degree and misdemeanor theft. She was sentenced concurrently to 21 months imprisonment. During cross-examination of appellant at the trial, and over the objection of appellant's attorney, the prosecutor was allowed to question her about unrelated incidents of domestic abuse and bad conduct. Appellant asserts that this evidence unjustifiably prejudiced her and deprived her of her constitutional right to a fair trial. She demands reversal of the assault conviction and a new trial on that charge.[1] We agree that appellant was de-

1. Appellant admitted the theft charge in her testimony at trial.

nied a fair trial and accordingly reverse the assault conviction and remand it for a new trial.

## FACTS

At about 11:30 p.m. on February 17, 1991, appellant entered the Holiday gas station in East Duluth and stole two cartons of cigarettes. Another customer saw appellant commit the theft and followed her and her husband to their home. The customer then returned to the Holiday station and gave appellant's address to Duluth police officers Holt and Lee who were then at the Holiday station.

Holt and Lee obtained permission to investigate the theft. Their supervisor told them that he recognized the address as that of appellant and her husband. The two officers then proceeded to appellant's home, which was dark when they arrived. After the officers knocked on the back door, a face appeared at the window; shortly thereafter appellant stepped out onto the back porch. At this point the facts become disputed.

The police testified that appellant matched the description of the thief given by a station employee. They told appellant that they were investigating a shoplifting incident and appellant gave them permission to enter the house through the back door. The police testified that appellant threw a carton of cigarettes behind the door as they entered. When the police retrieved the cigarettes they found a second carton behind the door. The police testified that appellant then began swearing at them and demanding that they leave her house. They wanted to write a citation and leave, but they did not know appellant's identity. Apparently appellant closely resembles her sister, a fact known to the police. While filling out the citation, appellant squirted sink water on the officers, and then, according to the officers, she lunged at them with a knife. She was subdued and taken to the hospital for injuries which she sustained during the scuffle.

Appellant's version of the incident differs. She testified that the officers came into her home uninvited, attempted to give her a citation with her sister's name on it, and then refused to leave. She testified that she pushed Holt and was then thrown to the floor by Lee.

During cross-examination by the prosecutor, appellant testified that she stole the cigarettes because her husband, Phil, wanted her to. Asked whether she had a choice in the matter, appellant testified, "I never say 'no' to Phil." The cross-examination continued as follows:

Q You have been—Phil has called the police to protect him from you, hasn't he?

MR. LIND [ (defense counsel) ]: Objection, Your Honor. This is going into issues which even aren't on trial here. I don't believe counsel has a right to do that.

THE COURT: Well, the door has been opened to a certain extent. I'll let her answer.

Q Isn't it a fact that Phil has called the police because you were out of control?

A Phil has called the police because I have kicked him out of my house, and that is all.

Q What about just about a week and a half ago?

MR. LIND: Objection, Your Honor. Again, it's an incident which we are not dealing with today.

THE COURT: I'll let her answer, but I will ask that you rephrase the question.

Q Okay. Let's go back to April 12, 1991. Were the police called?

A Yes.

Q Were you out of control?

A No. I was arguing with him.

Q Arguing with Phil?

A Because he punched me in the face.

Q Okay. You were upset because you were at a restaurant and they weren't bringing you a pizza in time?

A That is not true. We didn't even order a pizza. We went there to use the phone to call a cab.

Q And you threw a pitcher of beer?

A I didn't throw anything.

MR. LIND: Objection, Your Honor.

\* \* \* \* \* \*

Q Now, one last question regarding you and your husband, Phil. Is it a fair statement, fair picture for this jury here that you and your husband, Phil have had a very up and down relationship and fought verbally and physically, correct?

A If things don't go his way, he goes off.

\* \* \* \* \* \*

Q But these officers—you were bleeding and these officers were concerned for everyone's safety, is that right?

A These officers weren't concerned about me, no.

Q It's true, isn't it, that in the presence of Sergeant Greeman on a prior occasion, you spit in the face, a big gob of spit right in his face, didn't you?

A That is not true.

Q Officer Scott Campbell? You deny that?

A Not me.

\* \* \* \* \* \*

Appellant at no time placed her character at issue. The jury convicted her of felony assault and theft.

## ISSUES

Appellant asserts she was denied a fair trial because the prosecutor was allowed to question her about incidents of domestic abuse and bad acts unrelated to the assault charge against her.

## ANALYSIS

Despite objection, the prosecutor was allowed to cross-examine appellant on prior incidents of misconduct. These incidents involved unspecified calls to the police by her husband, an allegation that approximately two weeks before the trial she participated in a fight with her husband involving punching and throwing beer, an "up and down" relationship with her husband, and aggressive spitting, presumably in the face of her husband. The totality of these alleged incidents indelibly stamp appellant as a person with violent propensities.

The state justifies its cross-examination on the ground that it was a proper attempt to impeach appellant's testimony that her husband made her steal the cigarettes. Appellant was on trial for charges of assault and theft. During the trial she admitted the theft, however.

In seeking impeachment, the prosecutor questioned appellant about several incidents involving her prior acts of domestic violence or aggressive behavior. In response to the prosecutor's inquiry, appellant admitted that she kicked her husband out of the house, but denied that she was out of control, had thrown a pitcher of beer, or had spat on anyone. Apart from appellant's admission that she kicked her husband out of the house, the matters under cross-examination were totally unproved. No *Spreigl* notice has ever been in issue.

■ Evidence of a defendant's prior misconduct is not admissible to prove the defendant's character in order to show action in conformity therewith. Minn.R.Evid. 404(b). If the evidence has the effect of enabling the jury to infer appellant's predisposition to commit any act for which she was on trial, the evidence must be excluded. *Id.* Evidence of other crimes or bad acts independent from that for which the accused is on trial is inadmissible to prove the instant charge. *State v. Black*, 291 N.W.2d 208, 214 (Minn.1980). Moreover, the prior acts must be proved by clear and convincing evidence. Minn.R.Evid. 404(b). Evidence of prior bad acts of the accused in criminal trials should be closely scrutinized because a jury could easily consider the bad acts as proof of a defendant's bad character and tendency to act similarly in the case before the jury.

■ Where the evidence is of "such an exceptionally prejudicial character that its withdrawal from the jury cannot remove

the harmful effects caused by its admission, a new trial should be granted." *State v. Bergland,* 290 Minn. 249, 254, 187 N.W.2d 622, 626 (1971); *see also State v. Flowers,* 262 Minn. 164, 167, 114 N.W.2d 78, 80 (1962) (mere asking of a question regarding a defendant's propensity to commit certain types of crimes is sufficiently damaging to require reversal, even where objection to question is sustained); *State v. Martin,* 256 N.W.2d 85, 86 (Minn.1977) (disallowance of answer insufficient to remove impact of inherently prejudicial line of questioning).

The state cannot "deprive a defendant of a fair trial by means of insinuations and innuendos which plant in the minds of the jury a prejudicial belief in the existence of evidence which is otherwise inadmissible." *State ex rel. Black v. Tahash,* 280 Minn. 155, 157, 158 N.W.2d 504, 506 (1968) (quoting *State v. Currie,* 267 Minn. 294, 301, 126 N.W.2d 389, 395 (1964)).

 The prejudicial impact of the prosecutor's inquiry outweighed its probative value. Allowing such an inquiry also cannot be found to be harmless error beyond a reasonable doubt. The test of harmless error beyond a reasonable doubt is "whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction." *Chapman v. California,* 386 U.S. 18, 23, 87 S.Ct. 824, 827, 17 L.Ed.2d 705 (1967). There is *at least* a reasonable possibility that the prosecutor's improper questions contributed to appellant's assault conviction.

### DECISION

The trial court erred by permitting the prosecutor, over objection of appellant, to cross-examine appellant on prior incidents of bad conduct. Appellant's conviction of second degree assault is reversed and remanded for a new trial.

Reversed and remanded.